W. P. McALISTER v. AMERICAN RAILWAY EXPRESS COMPANY AND THE SOUTHERN EXPRESS COMPANY.

(Filed 19 May, 1920.)

**1. Corporations— Absorption— Consolidation— Merger— Continuance in Business—Assets—Debts and Liabilities.**

The principle that a corporation taking over another by reorganization, consolidation, amalgamation, or union is subject to the debts and liabilities of such corporation, rests upon the ground that the corporation so taken over either has not been paid a consideration, or that the transaction was in fraud of its creditors, or upon the presumption of a trust for creditors and does not apply when it *bona fide* and fairly sells only a part of its assets or property to the other corporation and continues to exist and to exercise its functions under its franchise.

2. Same—Sale of Assets—Solvency—Express Companies—American Express Companies—Government Control—Fraud—Principal and Agent —Process—Service.

An express company conveyed its property, used in transportation, for its appraised value, to the American Express Company formed at the suggestion of the Director General of Railways, etc., under Government control, retaining property of very large value, so that it remained perfectly solvent, and continued to do business under its franchise, and having its own officials and shareholders distinct from those of the new corporation: *Held*, there was therein no such reorganization, reincorporation, merger, or element of fraud or trust as would make the American Express Company liable for the negligence, torts or obligations of the company, whose property it had thus acquired, nor is the case affected by the provisions of the Revisal, sec. 440, requiring foreign corporations to keep a process agent in this State.

3. Corporations—Sale of Franchise—Extinction—Debts and Liabilities.

A merger or consolidation of one corporation with another, so as to render the latter liable for the debts and obligations of the former, without special contract, implies an extinction of the old corporation, and does not apply when it remains solvent and continues to be an actively going concern, under its franchise, and especially when retaining a part of its property of great value.

4. Corporations—Sale of Franchise—Statutes—Power to Construct and Operate.

The franchise of a corporation "to be such" is entirely distinct from its franchise to transact its business. In this case, the Southern Express company retained its franchise "to be" and "to operate," and also a large part of its property and assets, and the doctrine of merger, or consolidation, does not apply.

CIVIL ACTION, tried before *Calvert, J.,* and a jury, at December Term, 1919, of ROBESON.

Plaintiff shipped by the Southern Express Company a package of paint from Lumberton to Hendersonville, in this State, to his own order, and paid the freight charges thereon. The paint was shipped on 22 March, 1918, and not being delivered, on 2 May, 1918, he filed a written claim with the Southern Express Company for the negligent failure to transport and deliver the same, claiming damages in the sum of $16 for the paint and freight paid, and $50 for the penalty. The Southern Express Company was not served with process, and no judgment was entered against it. The court submitted issues to the jury, which, with the answers thereto, are as follows:

"1. In what sum, if any, is the defendant, Southern Express Company, indebted to the plaintiff on account of the loss of merchandise, as alleged in the complaint? Answer: '$16, with interest from 5 May, 1918.'

"2. In what sum, if any, is the defendant, American Railway Express Company, indebted to the plaintiff on account of loss of merchandise, as alleged in the complaint? Answer: '$16, with interest from 5 May, 1918.'

"3. Did the plaintiff file claim in writing with the agent of the defendant, Southern Express Company, within the time provided by law for the sum of $16. Answer: 'Yes; claim filed 5 May, 1918.'

"4. Did the defendants, or either of them, pay said claim within three months after the filing of the same, as provided by statute? Answer: 'No.'

"5. In what sum is the defendant, Southern Express Company, indebted to the plaintiff on account of the penalty for failure to pay said claim within the time provided by law? Answer: '$50, and interest from 1 January, 1919.'

"6. In what sum is the American Railway Express Company indebted to the plaintiff on account of failure to pay said claim within the time provided by law? Answer: '$50, and interest from 1 January, 1918.'

"7. Does the defendant, Southern Express Company, maintain a process agent, or own any property within the State of North Carolina? Answer: 'No; not since 30 June, 1918.'"

The plaintiff introduced evidence as to his claim, and rested.

The defendant introduced an agreed statement of the facts in the case as follows: Stipulation of facts as to the transfer of property, Southern Express Company to American Railway Express Company:

1. The Southern Express Company is a corporation organized under the laws of the State of Georgia, and conducted the principal express business in the Southeastern States for a long number of years.

2. When the railroads were taken over by the United States Government, under proclamation of the President dated 26 December, 1917, the Southern Express Company and other express companies doing business in the United States, had no contracts under which they might operate. It was stated to them by the Director General of Railroads that if they would transfer to a new company their properties used in the express transportation business the Director General would make a contract with that new company to conduct the express transportation business of the company, or rather roads under Government control.

3. An agreement was reached and the tangible properties used by the Southern Express Company and the Adams Express Company, the American Express Company and the Wells & Fargo Company's express were transferred to the American Railway Express Company, effective 1 July, 1918.

4. The American Railway Express Company was incorporated under the laws of the State of Delaware, with an authorized capital stock of

$40,000,000, with an actual capital stock of $33,000,000; $30,000,000 of this actual capital stock was paid in by the transfer of the tangible property of the above mentioned old express companies, upon the basis of the cost of those properties, less their depreciation. The old companies did not transfer money, notes, and accounts, nor did they transfer any property not used in the express transportation, which means that they did not transfer any of the assets used in the conduct of any other business than a transportation business. They did not convey any of their investments, such as stocks, bonds, notes and accounts, or real estate or other personal property not used in transportation business.

5. No one of the old companies ceased to have corporate life. Each of the old companies continued to own a part of the properties which it had previously owned, consisting of moneys, notes and accounts, and other property not used in the express transportation business, and in addition thereto those companies owned the stock of the American Railway Express Company which they had acquired by the transfer of their properties, which amounted in the aggregate for the several companies to $30,000,000, and they owned $3,000,000 more of that stock which they paid for in cash in order to furnish the new company with working capital.

6. The Southern Express Company acquired about $1,600,000 of the stock of the American Railway Express Company in the manner above stated.

7. The Southern Express Company continued to own and now owns certain real estate, stocks, and bonds not included in the property transferred to the American Railway Express Company. The American Railway Express Company did not assume the debts of any of the old companies, including the Southern Express Company. The Southern Express Company is continuing its corporate existence with a president, treasurer, a claim department, counsel, and board of directors. Its business is being conducted at 51 Broad Street, New York.

The defendant rested; the plaintiff was then permitted to offer the following evidence:

R. E. Lewis, being duly sworn, testified: I am sheriff of Robeson County, and since 1 July, 1918, I had an execution in my hands issued against the Southern Express Company, and was unable to find any property belonging to this company in my county.

By consent of the defendant, the plaintiff offered a telegram from the Corporation Commission, stating that it was advised by the general counsel for the Southern Express Company that said express company had no property within the State of North Carolina since 30 June, 1918.

The defendant in due time, and proper manner, moved to nonsuit, and the motion was denied.

Judgment was entered upon the verdict, and defendant, American Railway Express Company, appealed.

*Johnson & Johnson for plaintiff.*
*McLean, Varser, McLean & Stacy and R. C. Alston for defendant.*

WALKER, J., after stating the facts as above: We cannot bring our minds to the conclusion that the defendant is liable for the debts of the Southern Express Company upon the material facts of this case. The cases which hold that a new corporation must· pay the debts of the original one are those where there was a reorganization, consolidation, amalgamation, or union, and the new company is subjected to liability for the debts and torts of the old company upon the ground of an implied *assumpsit,* or of fraud, or under the trust fund doctrine, or because, by reason of the facts and circumstances, the complete absorption of the old company and its assets, including its franchise, being the leading and controlling one, it is completely substituted in its place, and thereby becomes the debtor to its creditors. It would be manifestly unfair, unjust, and contrary to equity that it should thus acquire all of the assets of the other corporation, and its franchise, both to be, and to do, leaving no one to be sued by its creditors and no property to satisfy its debts and other liabilities, and not itself become responsible for such debts and other liabilities. If it takes the benefit, it must, as has so often been said, take the burden, which equitably attaches, with it. But this case bears no resemblance to the ones just stated. There has been no reincorporation, reorganization, consolidation, merger, or anything else done. The Southern Express Company is still a live and going concern. It is exercising both its franchise to be, and to operate, and to conduct its business, and it is not even insolvent, but has enormous assets apart from the property assigned, for commensurate and adequate value, to the Delaware corporation, which is the defendant here. It is contended that the Southern Express Company has had no process agent in the State since 30 June, 1918, which means nothing more than this, that the said company retired from the express transportation business, having sold its property used in that department to the defendant for the consideration of so much stock of that company of equal value, and that therefore it required no officer or agent to transact that kind of business, upon whom process could be served under Revisal, sec. 440, as it no longer required the employment of such officer and agent in this State, and it does not refer to a person who acts in its behalf only for the purpose of receiving the service of process, as

in the case of some other corporations. It never had any such agent. It may here be said that the Southern Express Company has ample assets to pay the claim of the plaintiff, and he may still resort to them for its satisfaction. We have so far principally discussed the facts of the case. We will now turn to the law, and refer to a few well settled principles, and apply these facts to them. It has been held, for instance, that the rule, which applies when there is a merger or consolidation, so that the original company becomes extinct, has no application when there is merely a sale of property by one corporation to another, no more than it would apply when there is a sale to an individual. "It seems that the foregoing rule is not applicable to a *bona fide* sale by one corporation to another of all of its property for a good consideration, but that in such a case the purchasing corporation would hold the assets discharged of any obligations towards the creditors of the selling corporation." 10 Cyc., 308.

"Where there has been neither a consolidation nor a merger, but a mere sale, by one corporation of its property to another, that sale, if permitted by the Constitution and the laws as not being against public policy, or otherwise illegal, and if made for a valuable consideration and in good faith will pass the property of the selling corporation to the purchasing corporation free from claims of mere simple contract creditors. In every such case the same rule obtains as obtained in the sale of an individual to another individual." *Vicksburg, etc., Tel. Co. v. Citizens Tel. Co.,* Miss., 231.

"If one corporation purchases the property of another, it is not liable to the other's creditors for its debts." *Kentucky Dist. & Warehouse Company v. Webb, Executor,* 203 S. W., 870.

"As a general rule, the mere purchase of the assets and franchise of one corporation by another will not imply a promise on the part of the new to pay or satisfy the debts and obligations of the old." 5 Thompson on Corporation (2 ed.), sec. 6090.

"A *bona fide* purchaser of the assets of a corporation is not, nor is the property conveyed, liable for its debts, except such as are contracted or incurred in the operation, use, or enjoyment of its franchise, in the absence of agreement to that effect, unless the purchaser is a reorganization of the vendor, or unless by merger or otherwise, the one is a continuation of the other." *Moore v. Boise L. & O. Co.,* 173 Pac. Reps., 117.

It is held in *Evans v. Unity Investment Co.,* 196 S. W. Rep., 49, that where there is no intent to defraud creditors, "The mere transfer of the assets of a corporation, even in a failing condition, to another corporation, does not, *ipso facto,* render the latter liable for the former's debts.

36—179

The transfer was not made without consideration to the old company; neither was it made in order to defraud its creditors, but in order that they might be paid."

"Where one corporation conveys its property to another, this alone does not destroy the corporate existence of the grantor or constitute a merger of the two corporations." *L. & N. Railroad Co. v. Hughes,* 134 Ga., 75.

"When a new corporation, with different stockholders, is formed, it cannot be sued by the creditors or be liable for the debts of the old corporation except upon some special ground, such as having received the assets of the old corporation without giving value therefor." *Donally v. Herndon,* 41 Va., 519.

There has been no merger, or consolidation, of the Southern Express Company by the defendant, as they both imply an extinction of the old corporation, which is not the fact in this case, as the former is much alive, and an actively going concern, with its franchise and a large part, if not the largest part, of its property retained. The defendant's stockholders are altogether different from those of the Southern Express Company, they being the four express companies, while the stockholders of the others are individuals, none of the stockholders of the four companies being a stockholder in the defendant company. So that the formation of the American Railway Express Company lacks certain elements which are essential in order to charge it with the antecedent debts or torts of the other companies. We may as well, at this point, advert to the object contemplated and to be attained in the formation of the American Railway Express Company. The United States Government had taken possession of the railroads of this country for the purpose of more effectively prosecuting the war against Germany and her allies. At the time this was done, the express companies had contracts with the railroad companies for the transportation of goods over their lines in the general conduct of the express business. These contracts were virtually annulled by the action of the Government in respect to the railroads, and in order to restore this traffic, negotiations between the two parties, the express companies and the Government, were entered upon for this purpose. It was suggested by Mr. McAdoo, Director-General of Railroads, that for convenience in the transaction of the express transportation business, it would be best to form a new corporation, to which the express companies should convey all their property used in their transportation business, and each of them receive, in consideration thereof, so much of the stock of the new company as would be equal, at its par value, to the value of the property sold by it to the said company. This suggestion was at once accepted and carried out. The company was incorporated under the laws of Delaware, and

the transfer and issue of stock was made accordingly. The Government wanted to buy the property, as it was exactly suited to its purpose, and in the situation thus confronting them, the express companies were anxious to sell, as they, of course, would otherwise have no use for the property, and, besides, without such an adjustment it would become greatly depreciated in value, as there was no chance of restoring the status *quo ante bellum,* or any hope of replacing the old system with any system of transportation of similar usefulness and efficiency. So both parties being accommodated in their wishes and purposes, the Director General's suggestion was adopted. The great advantage such an arrangement would be to the Government in coping with the immensely increased traffic during the war period, was an additional consideration in bringing about the agreement. There was absolutely no fraudulent purpose, because fraud could not possibly be predicated of such a transaction, but, on the contrary, it was based upon a good and valuable consideration, the stock of the company—presumably being at its par value, and it was underlaid with the highest and most patriotic motive to better prepare the Government for meeting and overcoming its adversaries. So that this takes from the arrangement every element which would expose it to successful attack. It was nothing but a sale of part of its property by each of the four express companies. There was no semblance of merger, consolidation, reincorporation, or anything else, which required the surrender of its franchise, on the part of any one of the express companies, and its extinction as a corporation. The Southern Express Company did not, and could not, act in dual capacities, that is, sell its franchises, and, at the same time, retain them, nor could it maintain its separate corporate existence, as a going concern, and, at the same time, part with it, by becoming merged or consolidated with the other companies into the defendant company. The two positions are inconsistent with each other, as a merger or consolidation presupposes the surrender of its franchise, or right to be, and not that it still exists and continues to operate, as it does upon the facts before us. There has been, therefore, as we have before said, no merger or consolidation, but simply a sale of property, which carries with it no liability for the debts of the seller. In this case, the defendant is not the owner of the franchise of the Southern Express Company, but has merely purchased some of its property, which it is now using in its business, not under the franchise of the old company, but under its own, as a corporation of Delaware, organized under a charter granted by that State to it. This is illustrated by the case of *Seaboard Air Line Ry. Co. v. Leader et al.,* 115 Ga., 702, where it was held that in order to render a railroad company liable on the contracts or for torts committed by its predecessor in title, it must appear that it had assumed

the liability of its predecessor, or that the law charged it with such liability.   The Court further held that, under Civ. Code, sec. 1863, of Georgia, providing that any corporation in the State operating the franchise of another corporation is subject to its burdens, and can be sued when and where and for like causes for which suits could have been maintained against such other corporation, were it in possession of the franchise so acquired, there is nothing which renders a corporation purchasing the line of railway of another corporation liable either on its contracts or for its torts.   That a railway company is operating a railway which formerly belonged to another company does not render the company so in possession liable for damages growing out of a breach of contract, which had been entered into by the other company.   It will be seen, therefore, that the defendant was acquitted in that case of any liability, even under the statute mentioned, which is very broadly worded, and upon the ground that there was no surrender of its charter, but only a simple sale of its property.   That case is a direct authority for the defendant's position that there is no liability here. The facts of the two cases are substantially the same, as the plaintiff sued in the Georgia case for the loss of goods valued at $29.50.   He was successful in the justice's court and in the Superior court, the judgment being reversed in the Supreme Court, and for the reason that the transaction was a sale of the Georgia & Alabama Railway, but not of its franchise, to the Seaboard Air Line Railway Company.   The Court said in concluding:   "Nothing in that decision (*Ala., etc., Railroad Company v. Fulghum,* 87 Ga., 263), or in the section of the Code construed in the light of that decision, would render a railroad company, which purchased the line of another company, liable for the breach of a contract of its predecessor in title, or for damages growing out of a tort committed by it, in the absence of an agreement on its part to pay such claims against its predecessor in title."   A simple perusal of the opinion in the *Leader* case will reveal how closely the facts of that case and this one are allied, and if there is any difference, it is entirely favorable to the defendant in this case.   The distinction between a merger and a sale is clearly shown in *Atlanta, etc., Railroad Company v. A. C. L. Railroad Company,* 138 Ga., 353, and there a merger or consolidation is thus defined:   "Where two corporations effect a consolidation (or merger), *and one of them goes entirely out of existence,* and no arrangements are made respecting its liabilities, the resulting consolidated (or merger) corporation will, as a general rule, be entitled to all the property and answerable for all the liabilities of the corporation thus absorbed."   But, says the Court in that case, where a railroad company sells its property, the buyer is not responsible for more than the purchase money, p. 357.   To the same effect is the case of *Pennison*

v. *Chicago, etc., Ry. Co.,* 93 Wis., 344, where it was held: In an action against a railroad company a complaint alleging that defendant "purchased and had assigned to itself the railroad, franchises, immunities, stocks, bonds, and all property and appurtenances" of another company, shows merely a succession, and not a consolidation such as would render defendant responsible for a tort previously committed by its vendor. A railroad company's franchise to be a corporation is entirely distinct from its franchises to construct and operate its road, and is not the subject of sale or transfer unless by virtue of some positive statutory provision. The Court, in the course of its opinion, said: cases cited declaring and illustrating the effect of consolidation in respect to the debts and liabilities of the companies of which the consolidated company is composed are not material to the present inquiry. The complaint shows simply that what is called in some of the books a "succession" has taken place, and that the property of a corporation has been purchased at a private sale, which differs from a consolidation in this respect, that the purchaser thus acquiring the property and franchises of the selling corporation does not become responsible for its liabilities already accrued. This is quite well settled, and we have not been referred to any well considered case to the contrary, citing for this position Taylor on Private Corporations, sec. 415; *Wright v. R. R. Co.,* 25 Wis., 46, and other cases. Referring to the *Wright case, supra,* it said: "The allegations relied on to charge the defendant company were, in substance, the same as in the present case, and extended there, as here, to a sale of the franchises; but it was held that this averment should be interpreted as extending only to the franchise of operating the road sold, and *Paine, J.,* states tersely that 'the distinction between the franchise of constructing and operating a railroad, and the franchise of being a corporation and of contracting, suing, and being sued as such, is well established,' and that upon such allegations it was only the former that passed to the purchaser. In the absence of any contract or of a statute imposing the liability contended for, it does not exist." The law with reference to the liability of one corporation for the debts and torts of another, when there has been merger or consolidation, under a purchase of its franchise of both kinds, and also its property or assets, and its nonliability for such debts and torts when there is only a sale, is fully considered and the authorities cited, in a note to *Atlantic & B. R. R. Co. v. Johnson,* 11 L. R. A. (N. S.), 1119. "Where a corporation transfers all its assets to another corporation and does not agree to assume the liability of the selling corporation, and both corporations maintain a separate existence, then in the absence of fraud the purchasing corporation will not be answerable for any debts of the selling corporation." 10 Cyc., 1268. The transfer of some of its property by

the old company did not close its business, nor destroy its identity, or its corporate existence, but it continued to do business under its charter, and there was no fraud in the transaction, it being necessary under the circumstances, to show fraud in order to charge the new company with the payment of the old company's debts and liabilities. *M. Nat. Bank v. Claggett,* 141 U. S., 520; *Goldmark v. Magnolia Metal Co.,* 60 N. Y. Suppl., 425.

After this review of the authorities, it will not be useless repetition to restate the fact that the sale, in this case, extended to only a part of the property of the Southern Express Company, and that its primary franchise was not included in the sale.

While we decide with the defendant, we do not agree with its view that the plaintiff is seeking to impose directly upon the defendant the penalty of our statute mentioned in the complaint. It only seeks to recover the penalty, if entitled to it, as a part of the debt, or liability, of the Southern Express Company to him. He could not recover the $50 simply as a penalty imposed on the defendant by the State for its delinquency, because it was not in the possession of the Southern Express Company's property when the penalty accrued, but if defendant were at all indebted to plaintiff, the liability would include the penalty as a part of the sum due the plaintiff from the Southern Express Company.

The court erred in its instructions upon the issues, and in refusing a nonsuit. The opinion will be certified with directions to reverse the judgment and dismiss the action.

Reversed.