BUDD TIRE CORPORATION v. PIERCE TIRE COMPANY, INC., PHIL PIERCE, TIRE SALES, INC., PHILLIP LEE PIERCE, TODD PARKER, AND CLARENCE BAITY

No. 8811DC136

(Filed 19 July 1988)

1. **Corporations § 31; Fraudulent Conveyances § 3.4— purchase of assets of one corporation by another corporation—insufficient assets retained to pay creditors—transaction fraudulent**

    Evidence was sufficient to support the trial court's findings that all of the assets of a tire company were sold for insufficient consideration, the tire company did not retain sufficient assets to pay existing creditors, and the purchaser knew of the tire company's debts and that the consideration paid would be inadequate to satisfy those debts. Such findings compelled the trial court's conclusion that the transfer was fraudulent.

2. **Corporations § 31; Fraudulent Conveyances § 2— purchase of assets of one corporation by another corporation—good will sold—fraudulent transaction—money damage award equal to value of good will**

    Where one corporation purchases all or substantially all of the assets of another corporation, including the good will, in a manner deemed fraudulent, the selling corporation's creditors may follow the good will into the hands of the purchasing corporation and obtain a money damage award equal to its value.

3. **Unfair Competition § 1— sale of corporation's assets—insufficient assets retained to pay creditors—sale not unfair and deceptive trade practice**

    In plaintiff's action to collect a debt owed under a contract by setting aside the sale of its debtor's assets, the trial court did not err in concluding that the sale was not an unfair and deceptive trade practice in violation of N.C.G.S. § 75-1.1, since the evidence showed no intent to defraud plaintiff but the transaction was merely deemed fraudulent to provide plaintiff an equitable remedy.

APPEAL by plaintiff and defendant from *Christian, Judge.* Judgment entered 10 September 1987 in District Court, LEE County. Heard in the Court of Appeals 2 June 1988.

This is an action to collect a debt of approximately $12,000. Plaintiff is a North Carolina corporation, engaged in the business of selling retread tires. Defendant Pierce Tire Company, Inc. (Tire Company), is a North Carolina corporation whose principal business is the retail sales and service of tires. Tire Company is owned entirely by Gilbert and Helen Pierce, whose son, Phil, worked as an employee servicing its largest customer, a local

soft drink distributor. Tire Company had purchased retread tires from plaintiff on account. In late 1984, however, Tire Company was insolvent and owed, in addition to the debt to plaintiff, approximately $10,000 to the Internal Revenue Service and over $2,000 to the North Carolina Department of Revenue. Tire Company's assets consisted of its equipment, a small inventory of tires, its goodwill, and accounts receivable of a few thousand dollars. Ms. Pierce, due to an illness suffered by Mr. Pierce, was, at all times relevant to this case, managing Tire Company.

Late in 1984, Mr. Clarence Baity, who owned a tire servicing business called "Baity's Tire Service, Inc.," approached Ms. Pierce about purchasing Tire Company. Mr. Baity was impressed with Tire Company's customer accounts, and he and Ms. Pierce discussed purchase prices ranging between $20,000 and $30,000. Following her discussions with Mr. Baity, Ms. Pierce talked with Mr. Todd Parker, an employee of Mr. Baity. Ms. Pierce testified that Mr. Parker told her that he and Mr. Baity could purchase only one-third of Tire Company's assets and would have to lease the other two-thirds. Ms. Pierce testified that she assumed, despite Mr. Parker's statements, that she had an agreement with Mr. Baity to sell all of Tire Company's assets for $25,000.

On 28 February 1985, Tire Company ceased doing business. The next day, defendant Phil Pierce Tire Sales, Inc. (Sales) moved into the same building and began its operation. Mr. Baity owns 75 percent of Sales' outstanding shares; the remaining 25 percent is owned by Mr. Parker. Phil Pierce is Sales' president. In addition to moving into the same building, Sales continued the same business as Tire Company, retaining the same sign on the building, answering the telephone in the same way, and servicing the same customers. The soft drink company account generated approximately $4,000 per month in gross revenues for Sales, about one-quarter of all its revenues. Shortly after Tire Company ceased operating, both Ms. Pierce and Phil Pierce telephoned Tire Company's customers and asked them to continue their business with the new corporation.

On 18 March 1985, Sales issued two checks, each for $5,000 and gave them to Ms. Pierce. One check was made payable to "Pierce Tire Service, Inc." and the other to Ms. Pierce individually. The later check was denominated as a "loan," although Sales

has never demanded or received repayment. Ms. Pierce cashed both checks and paid the entire $10,000 to the IRS. In March, April, and May, Sales sent Ms. Pierce checks for $150 each, as payment on the "leased" assets, but ceased further payments after the North Carolina Department of Revenue exacted over $2,000 from Sales to pay Tire Company's back taxes.

Plaintiff initially brought suit naming only Tire Company as defendant. By amended complaint, however, plaintiff added Sales as a defendant, alleging that it fraudulently purchased Tire Company's assets for inadequate consideration, leaving Tire Company without assets to pay existing creditors. Plaintiff also alleged that the transfer of assets was an unfair and deceptive trade practice under Chapter 75 of the General Statutes. Plaintiff's claim against Tire Company was reduced to judgment on 27 March 1986 but a subsequent execution was returned essentially unsatisfied after a portion of the transferred assets were sold for $470, less execution and sale expenses. Tire Company is not a party to this appeal.

After trial without a jury, the trial court found, in part, that Sales had agreed to pay $25,000 for the purchase of all of Tire Company's assets; that Sales purchased Tire Company's "entire business operation"; that Sales had attempted to change the terms of the sale by tendering only $10,000 to Ms. Pierce; that Ms. Pierce, by failing to pursue Tire Company's claim for the remaining $15,000, failed to retain sufficient assets to pay its creditors; and that Mr. Baity and Mr. Parker knew of Tire Company's outstanding debts and that the $10,000 payment was insufficient to satisfy these debts. The trial court concluded that the transfer of Tire Company's assets was fraudulent and that, therefore, Sales had assumed liability for Tire Company's debt to plaintiff. The trial court denied plaintiff's motion to treble the damages. Both parties appeal.

*Moretz & Silverman, by J. Douglas Moretz, for the plaintiff.*

*Harrington, Ward, Gilleland & Winstead, by J. Allen Harrington and Eddie S. Winstead, III, for the defendant.*

EAGLES, Judge.

SALES' APPEAL

Sales' appeal raises two issues: (1) whether the trial court erred in finding that Sales purchased all of Tire Company's assets, and (2) even assuming that Sales did purchase all the assets, whether the trial court erred in holding Sales liable for Tire Company's debt to plaintiff.

A corporation which purchases all, or substantially all, of the assets of another corporation is generally not liable for the old corporation's debts or liabilities. *See McAlister v. Express Co.,* 179 N.C. 556, 103 S.E. 129 (1920); Robinson, North Carolina Corporation Law and Practice, section 25-6 (1983); 15 Fletcher Cyc Corp, section 7122 (perm. ed. 1983). Exceptions exist where: (1) there is an express or implied agreement by the purchasing corporation to assume the debt or liability; (2) the transfer amounts to a de facto merger of the two corporations; (3) the transfer of assets was done for the purpose of defrauding the corporation's creditors; or (4) the purchasing corporation is a "mere continuation" of the selling corporation in that the purchasing corporation has some of the same shareholders, directors, and officers. *Bud Antle, Inc. v. Eastern Foods, Inc.,* 758 F. 2d 1451 (11th Cir. 1985); *Robinson, supra; 15 Fletcher Cyc Corp, supra.* Some cases cite inadequate consideration for the purchase, or a lack of some of the elements of a good faith purchaser for value, as a separate exception, *see Kemos, Inc. v. Bader,* 545 F. 2d 913 (5th Cir. 1977); *Cyr v. B. Offen & Co. Inc.,* 501 F. 2d 1145 (1st Cir. 1974), although those are generally considered only as additional factors in determining whether the transaction was for the purpose of avoiding creditors' claims, *Bud Antle, Inc., supra,* or whether the new corporation is a mere continuation of the old one. *Robinson, supra.* Our case law is less recent but has adopted essentially the same exceptions. *See McAlister v. Express Co., supra* at 560, 561, 565, 103 S.E. at 130-131, 133.

[1] Sales argues that the record establishes that it did not purchase all or substantially all of Tire Company's assets, and does not fall within any of the exceptions to the general rule of purchaser corporation non-liability. We disagree.

A trial court's findings of fact are conclusive on appeal if there is evidence to support them, even if there is evidence to the contrary. *Menzel v. Metrolina Anesthesia Assoc.*, 66 N.C. App. 53, 310 S.E. 2d 400 (1984). Here, the record contains ample evidence to support the trial court's finding that Sales purchased all of Tire Company's assets. Sales' primary shareholder, Mr. Baity, discussed with Ms. Pierce purchasing Tire Company's entire business. Ms. Pierce testified that she believed the parties had agreed to a purchase of all of Tire Company's assets for $25,000 and that Mr. Parker told her that the "lease" arrangement was just to make the sale "legal." Moreover, plaintiff testified that the value of the equipment which Sales contends was only one-third of Tire Company's equipment was actually 65-80 percent of the value of all the equipment. Although both Mr. Parker and Mr. Baity testified that they agreed to purchase only one-third of the assets and to lease the other two-thirds, that does not establish that the transfer was not a sale of all or substantially all of the assets. That evidence merely creates a question of credibility, which is solely a question for the trial court. *Id.* The record shows no specific agreement between the parties as to the terms of a sale or lease. The trial court was left to determine the nature of the transfer from the surrounding circumstances. The evidence supports an inference that Sales purchased all of Tire Company's equipment.

Even assuming the evidence establishes that Sales only leased two-thirds of the equipment, the trial court could nevertheless have found that it purchased substantially all of Tire Company's assets. The evidence shows that Sales purchased Tire Company's good will. "Good will" is a property right which consists of intangibles associated with favorable community relations and identification of the business name. *See Faust v. Rohr*, 166 N.C. 187, 81 S.E. 1096 (1914); *North Clackamas Community Hospital v. Harris*, 664 F. 2d 701 (9th Cir. 1980). Although it exists as an incident of other property rights, *Ice Cream Co. v. Ice Cream Co.*, 238 N.C. 317, 77 S.E. 2d 910 (1953), "good will" is as much an "asset" as equipment, machinery, or other tangible property. *Bouligny, Inc. v. Steelworkers*, 270 N.C. 160, 154 S.E. 2d 344 (1967); *Lilly & Co. v. Saunders*, 216 N.C. 163, 4 S.E. 2d 528 (1939), *overruled on other grounds, Watch Co. v. Brand Distributors*, 285 N.C. 467, 206 S.E. 2d 141 (1974). The record establishes that Sales

succeeded to the "good will" that Tire Company had established in its twenty years of existence. There is also evidence that the good will was, in fact, Tire Company's primary "asset" and the main reason that Mr. Baity and Mr. Parker were interested in purchasing Tire Company's business. The trial court did not err in finding that Sales purchased all of Tire Company's assets.

Sales also argues that, even assuming that it purchased Tire Company's assets, the transaction does not fall within any of the exceptions to the general rule that a purchasing corporation is not liable for the debts of the seller. Our case law has treated the question of a successor corporation's liability for the debts or liabilities of its predecessor as a matter of equity, endeavoring to protect the predecessor's creditors while respecting the separateness of the corporate entities. *See Everett v. Mortgage Co.*, 214 N.C. 778, 1 S.E. 2d 109 (1939); *Begnell v. Coach Lines*, 198 N.C. 688, 153 S.E. 264 (1930); *Askew v. Hotel Co.*, 195 N.C. 456, 142 S.E. 590 (1928); *McAlister v. Express Co., supra.* When a corporation purchases all or substantially all of the assets of another corporation for grossly inadequate consideration, the transfer will be deemed fraudulent as to the selling corporation's creditors, regardless of whether the parties had the actual intent to defraud. *Everett v. Mortgage Co., supra; Nytco Leasing v. Southeastern Motels*, 40 N.C. App. 120, 252 S.E. 2d 826 (1979); G.S. 39-17. In addition:

> "[a] corporation holds its property subject to the payment of the corporate debts, and when a corporation sells or transfers its entire property to a purchaser, knowing the fact, the latter is chargeable with knowledge that the property is subject to the corporate debts and that equity will, in proper cases, allow the corporate creditors to follow the property into the hands of the purchaser, for satisfaction of their claims."

*Everett v. Mortgage Co., supra* at 785, 1 S.E. 2d at 113, quoting 7 R.C.L. p. 573, section 561.

The trial court found that the assets were sold for insufficient consideration, that Tire Company did not retain sufficient assets to pay existing creditors, and that Sales knew of Tire Company's debts and that the consideration paid would be inadequate to satisfy those debts. Those findings are supported by the evi-

dence and compel the trial court's conclusion that the transfer was fraudulent.

[2]   Sales also argues that plaintiff's remedy is limited to treating the sale as void and that the trial court's award of damages in the amount of the debt was erroneous. We agree that the remedy must be limited to allowing plaintiff to follow the transferred property into Sales' possession. We do not agree, however, that a monetary award is necessarily inappropriate.

As noted, the sale of Tire Company as an ongoing business resulted in the transfer of its good will as well as its tangible assets. Good will, however, is not separable from the business as a whole and is not susceptible of being disposed of separately from the property right to which it is incident. *Ice Cream Co. v. Ice Cream Co., supra.* Good will is an asset capable of being fraudulently conveyed and, where the good will is put beyond reach of creditors, equity will allow a money damage award equal to the value of the good will. *See Colandrea v. Colandrea,* 42 Md. App. 421, 401 A. 2d 480 (1979). Therefore, where one corporation purchases all or substantially all of the assets of another corporation, including the good will, in a manner deemed fraudulent, the selling corporation's creditors may follow the good will into the hands of the purchasing corporation and obtain a money damage award equal to its value. To hold otherwise would allow what Sales apparently is seeking to accomplish here: the purchase of an ongoing business, including its good will, while remaining liable to the seller's creditors only to the extent of the value of its tangible assets.

The trial court did not err in concluding that the sale of assets was fraudulent as to plaintiff. The trial court, however, made no finding of the value of the good will transferred to Sales. The case is remanded for hearing, determination of the value of the good will transferred, and modification of the judgment to reflect the value determined.

Sales' remaining argument, that plaintiff made an election of remedies which precludes an action against Sales, is without merit.

PLAINTIFF'S APPEAL

[3] Plaintiff argues that the trial court erred in concluding that the transaction was not an unfair and deceptive trade practice in violation of G.S. 75-1.1. We disagree.

Whether a commercial act or practice is violative of G.S. 75-1.1 is a question of law. *Hoke v. Young*, 89 N.C. App. 569, 366 S.E. 2d 548 (1988). Whether an action is unfair or deceptive will depend on the facts of each case and its impact on the marketplace. *Marshall v. Miller*, 302 N.C. 539, 276 S.E. 2d 397 (1981). Our Supreme Court has stated that "[p]roof of fraud would necessarily constitute a violation" of G.S. 75-1.1. *Hardy v. Toler*, 288 N.C. 303, 309, 218 S.E. 2d 342, 346 (1975). An action to recover damages for "fraud," however, is different than an action to set aside a conveyance as fraudulent. *See Marcoin, Inc. v. McDaniel*, 70 N.C. App. 498, 320 S.E. 2d 892 (1984), *disc. rev. denied*, 312 N.C. 797, 325 S.E. 2d 631 (1985). An action for "fraud" involves a claim for damages resulting from an intentional misrepresentation which the complaining party reasonably relied on, *id.*; consequently, fraud, by nature, is "unfair and deceptive." Here, plaintiff's action is merely to collect a debt owed under a contract by setting aside the sale of its debtor's assets. The evidence shows no intent to defraud plaintiff; the transaction is merely deemed fraudulent to provide plaintiff an equitable remedy. Consequently, we find none of the kind of deceptive or oppressive conduct against plaintiff which would classify Sales' actions as an unfair and deceptive trade practice.

Plaintiff's other argument, that the trial court erred in dismissing Mr. Baity and Mr. Parker from the action, fails to state any supporting legal authority as required by Rule 28(b)(5) of the North Carolina Rules of Appellate Procedure, and accordingly is deemed abandoned. Further, plaintiff articulates no theory of recovery against either Mr. Baity or Mr. Parker. We find no error in the trial court's dismissal of Mr. Baity and Mr. Parker.

Defendant's appeal—affirmed in part, vacated and remanded in part.

Plaintiff's appeal—affirmed.

Judges ORR and SMITH concur.