NO. COA13-773

NORTH CAROLINA COURT OF APPEALS

Filed: 4 March 2014

JOYCE FARMS, LLC
f/k/a HICKORY MOUNTAIN FARMS, LLC,

    Plaintiff,

    v.                                    Forsyth County
                                          No. 12 CVS 2114
VAN VOOREN HOLDINGS, INC., STANNY
H. VAN VOOREN, and WARRY VAN
VOOREN

And

VAN VOOREN GAME RANCH, INC.
An Ontario, Canada corporation,

    Defendants.


    Appeal by defendants from order entered 18 April 2013 by

Judge William Z. Wood, Jr. in Forsyth County Superior Court.

Heard in the Court of Appeals 10 December 2013.


    *Hendrick Bryant Nerhood & Otis, LLP, by Matthew H. Bryant,
    for plaintiff-appellee.*

    *Craige Brawley Liipfert & Walker, LLP, by William W.
    Walker, for defendants-appellants.*


    HUNTER, Robert C., Judge.


    Defendants appeal from an order entered 18 April 2013 in

Forsyth County Superior Court by Judge William Z. Wood, Jr.

granting plaintiff's motion for partial summary judgment and

dismissing defendants' counterclaims. Defendants contend on appeal that the trial court erred by granting plaintiff's motion for partial summary judgment because defendants' counterclaims were not barred, and there was ambiguity in the receivership sale documents as to whether liabilities were transferred, thus creating a genuine issue of material fact. Alternatively, defendants argue that summary judgment was improper because they fall under an exception to the general successor liability rule as set out in *Budd Tire Corp. v. Pierce Tire Co.*, 90 N.C. App. 684, 687, 370 S.E.2d 267, 269 (1988).

After careful review, we affirm the trial court's order.

## I. Background

This action arises from the second of two related proceedings between the parties. The first proceeding involved a civil action and arbitration leading to the judicial dissolution of Van Vooren Game Ranch USA, LLC ("VVGR USA"). The second proceeding, which gives rise to this appeal, involved a civil action after VVGR USA was dissolved and sold at auction.

Stan Van Vooren ("Stan") formed Van Vooren Game Ranch, Inc. ("VVGR Canada") in Ontario, Canada in 1987 to grow and sell pheasants for commercial consumption. VVGR Canada created a breed of white pheasants especially suited for meat production

and developed a market in North America and overseas. Ron Joyce ("Joyce") joined the family poultry distribution business, Joyce Foods, Inc. ("JFI") in Forsyth County, North Carolina in 1971, became sole shareholder and manager in 1981, and formed Hickory Mountain Farms, LLC ("HMF") in 2003 to manage JFI's farming operation.

In 2006, VVGR Canada sought a processor for its pheasants. After negotiation, HMF and Joyce entered into an agreement with Stan and Van Vooren Holdings Ltd. ("VVH") to form VVGR USA. VVGR USA was owned equally; HMF and Joyce owned 50% and Stan and VVH owned 50%. Joyce and Stan served as co-managers of the new company. VVGR USA was to purchase the assets of VVGR Canada for $2,200,000.00. In late 2006 VVGR Canada moved its assets to North Carolina. JFI provided office space and other services for VVGR USA, and JFI's chief financial officer administered VVGR USA's books and bank accounts.

In March 2007, VVGR USA established a $300,000.00 line of credit with SunTrust Bank ("the SunTrust loan") which was converted to a promissory note in 2008. The note gave SunTrust a security interest in all of VVGR USA's assets and was personally guaranteed by Joyce and Stan. The SunTrust loan went into default in 2009. VVGR USA negotiated a forbearance

agreement with SunTrust to keep SunTrust from seizing VVGR USA's assets while VVGR USA looked for other sources of income as it paid interest on the note. Out of the three parties liable on the note – Joyce, Stan, and VVGR USA – Joyce was the only party with sufficient assets to pay the debt.

Joyce and Stan were unable to work together as co-owners/managers of VVGR USA due to myriad disputes related to VVGR USA's relationship with JFI. In July 2011, JFI sent VVGR USA a demand letter for $100,548.62 owed for product sold and delivered. VVGR USA contended that, because of improper charges, JFI actually owed VVGR USA funds in excess of the amount demanded by JFI. Joyce, JFI, Stan, and VVGR USA agreed in August 2011 to submit their disputes to arbitration.

**A. Arbitration and Judicial Dissolution**

In the arbitration, Stan and VVGR USA filed, among other claims, a request for judicial dissolution of VVGR USA pursuant to N.C. Gen. Stat. § 57-6-02. Because judicial dissolution of VVGR USA would trigger default of the SunTrust note and Joyce's guaranty would be called upon, Joyce began a plan to protect his personal obligation in the note. Joyce determined that he would be paying off the note "one way or the other" and decided he would rather have control of the VVGR USA assets than lose them

in a bank auction, which he believed would not realize the assets' value. 2011 Asset Acquisition, LLC ("2011 AA") was formed by Todd Tucker, a JFI shareholder and officer, to purchase the SunTrust note from the bank. Art Pope, another JFI shareholder and creditor, loaned the funds to 2011 AA to buy the SunTrust note for $299,589.42. Joyce agreed, through HMF, to underwrite and fund 2011 AA's costs of purchasing the SunTrust note and take control of the VVGR USA collateral.

On 3 October 2011, Joyce and HMF commenced the dissolution action in Forsyth County Superior Court seeking (1) judicial dissolution of VVGR USA; (2) an order allowing the other VVGR USA owners to buy Stan and VVGR Canada's interest in VVGR USA; (3) a declaratory judgment determining the scope of the arbitration agreement; and (4) an order staying the arbitration proceeding. HMF specifically alleged management deadlock, that HMF was not a party to the arbitration agreement, and that VVGR USA should be "dissolved, its assets liquidated and creditors paid." On 5 October 2011, the attorney for Joyce and JFI informed Stan and VVGR USA that 2011 AA had purchased the SunTrust note. 2011 AA demanded immediate payment of the $299,589.42 balance on the SunTrust note and took possession of all of VVGR USA's assets pursuant to the original security

agreement.

On 10 October 2011, Stan and VVGR USA filed a counterclaim, a third-party complaint, and a motion for injunctive relief in the dissolution action. They argued that there was no factual or legal difference between Joyce, JFI, HMF, Tucker, and 2011 AA and that the acts of any one of them was the act of the others, meaning that all were subject to the arbitration agreement entered into by Joyce and JFI as part of their dispute with Stan and VVGR USA. Alternatively, they asked the court to enjoin Joyce, JFI, HMF, Tucker, and 2011 AA from pursuing claims outside the arbitration proceeding, and for the court to appoint a receiver to manage VVGR USA.

On 4 November 2011, the trial court: (1) denied the preliminary injunction motion; (2) found that HMF and 2011 AA were not parties to the arbitration agreement; (3) found that VVGR USA was deadlocked; and (4) ordered that a receiver be appointed to dissolve VVGR USA. The receiver operated VVGR USA until he made a motion to sell VVGR USA's assets, which was granted on 15 December 2011. Neither the order appointing the receiver nor the order approving the receiver's sale specifically mention any contract-based claims that Stan, his father Warry Van Vooren ("Warry"), VVH or VVGR Canada held

against VVGR USA. The bill of sale and motion to sell were silent with regard to the transfer of liabilities; however, an attached asset protection agreement explicitly stated that the sale would not transfer liabilities.

The receiver conducted an auction of VVGR USA's assets, where HMF submitted the highest bid of $510,000.00. The court approved the sale in an order dated 16 December 2011, with the details of the sale attached. The order approving sale provided that "[t]he Purchased Assets shall be sold free and clear of all liens, interests and encumbrances whatsoever[.]" With the sale complete, the receiver asked Tucker to specify all amounts VVGR USA owed to 2011 AA on the SunTrust note and security agreement purchased by 2011 AA. Tucker claimed 2011 AA was due $485,630.00 from VVGR USA, and the receiver paid the requested amount to 2011 AA. Tucker subsequently transferred his sole ownership of 2011 AA to Joyce for no consideration. Joyce therefore controlled all of VVGR USA's assets through the auction sale to HMF, and had the SunTrust note paid off to 2011 AA, which Joyce now solely owned. The arbitrator later conducted a hearing in March 2013 and entered a ruling on 2 April 2013 denying Stan's and VVH's claims against Joyce for money owed from unpaid capital contributions at VVGR USA's

creation.

## B. The Present Action

HMF commenced this action against Stan, Warry, VVH, and VVGR Canada (collectively "defendants") claiming they were liable to HMF as assignee for legal claims previously held by VVGR USA related to unapproved distributions and unpaid invoices, among other things. Defendants counterclaimed that HMF, as the owner of VVGR USA's contracts and goodwill, was liable to defendants for, *inter alia*, money owed from VVGR USA's initial purchase of assets from VVGR Canada in 2006 and subsequent loans defendants made to VVGR USA throughout the course of the business. After discovery, HMF filed a partial summary judgment motion claiming that the liabilities of VVGR USA were not transferred in the dissolution sale, and therefore all of defendants' counterclaims should be dismissed.

The trial court denied HMF's motion for summary judgment as to its own claims but granted the motion as to defendants' counterclaims, concluding that the receivership sale did not transfer VVGR USA's liabilities to the buyer, HMF. The parties settled all remaining claims shortly after jury selection. The settlement specified that it was a "final determination of the rights of the parties" and that "[d]efendants' right to appeal

the dismissal of [d]efendants' counterclaims [was] not waived or abridged by [the] settlement."

Defendants filed timely notice of appeal from the trial court's order.

## II. Discussion

Defendants contend that summary judgment was improper for three reasons: (1) their counterclaims were not barred by the dissolution because a genuine issue of material fact existed as to whether the trial court ordered a sale free and clear of defendants' contract claims against VVGR USA; (2) the order approving the sale of VVGR USA's assets to HMF was ambiguous, and thus its effect could not be determined as a matter of law; and (3) the evidence raises genuine issues of material fact as to whether any exceptions to the general successor liability rule apply. After careful review, we affirm the trial court's order dismissing defendants' counterclaims.

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 524, 649

S.E.2d 382, 385 (2007)). "An issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action." *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 182 S.E.2d 897, 901 (1972). On summary judgment, facts must be viewed in the light most favorable to the non-moving party. *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975).

## A. Effect of Dissolution on Defendants' Contract Claims

Defendants first argue that a genuine issue of material fact exists as to whether the trial court actually ordered that VVGR USA's assets were to be sold free and clear of defendants' contract claims against VVGR USA. We disagree.

Under the general successor liability rule, "a corporation which purchases all or substantially all of the assets of another corporation is not liable" for the transferor's liabilities. *Budd Tire*, 90 N.C. App. at 687, 370 S.E.2d at 269. Defendants' counterclaims all stem from alleged breach of contractual agreements defendants held with VVGR USA. Contract claims are liabilities that generally do not transfer to successor corporations. *See Becker v. Graber Builders, Inc.*,

149 N.C. App. 787, 791, 561 S.E.2d 905, 909 (2002). Thus, under the general rule, when plaintiff purchased all of VVGR USA's assets at the receivership sale, it did not acquire VVGR USA's liabilities, which included defendants' contract claims against it.

Despite the general successor liability rule, defendants argue that there is a genuine issue of material fact as to whether the judicial dissolution court specifically ordered VVGR USA's assets to be sold free and clear of defendants' contract claims. Because neither the order appointing the receiver nor the order approving the receiver's sale specifically mention defendants' contract claims against VVGR USA, defendants argue that there is a genuine issue of material fact as to whether these liabilities were transferred. We disagree. Though the trial court's orders do not expressly indicate that defendants' contract claims against VVGR USA were excluded in the receiver's sale of VVGR USA's assets, they do indicate that VVGR USA's assets were to be sold "free and clear of all liens, claims and encumbrances[.]" Furthermore, as is discussed in more detail below, all relevant documents related to the receivership sale indicate that it was intended to be a sale of assets only, with no liabilities included.

Absent any indication to the contrary, we hold that the trial court, consistent with the general successor liability rule, ordered a sale of VVGR USA's assets and did not order the transfer of VVGR USA's liabilities, including any contract claims defendants may have had against it.

## B. Ambiguity of Order Approving Sale

Defendants next argue that the order approving the sale of VVGR USA's assets was ambiguous and therefore could not be determined as a matter of law. We disagree.

At the outset, we note that defendants' argument as to this issue amounts to an impermissible collateral attack on the receivership sale of VVGR USA's assets. "Attacks on the validity of receiverships by collateral actions are not permissible under North Carolina law." *Hudson v. All Star Mills, Inc.*, 68 N.C. App. 447, 451, 315 S.E.2d 514, 517 (1984). The method of attacking a public sale of assets must be direct, either by motion in the cause or appeal, not through a separate action. *See Brown v. Miller*, 63 N.C. App. 694, 697, 306 S.E.2d 502, 504 (1983). "[T]he court being one of competent jurisdiction in receivership proceedings, and having acquired jurisdiction of the parties and the subject matter in controversy, it may not be interfered with by any other court of

co-ordinate authority[.]" *Hall v. Shippers Exp.*, 234 N.C. 38, 40, 65 S.E.2d 333, 335 (1951).

Here, defendants attempted to challenge the order approving the receivership sale in a new action brought in a trial court of coordinate authority as that which conducted the dissolution. The trial court in the dissolution action concluded, and defendants do not contest, that it had proper subject matter jurisdiction to oversee the receivership sale. Defendants failed to file any claims, motions, objections, or appeals in the dissolution action or otherwise challenge the receivership proceedings or the order authorizing the sale in any way. Therefore, because the trial court in the judicial dissolution case had proper subject matter jurisdiction over the parties with regard to the receivership sale, and defendants now contest the receivership sale before a new judge with co-ordinate authority, we hold that this argument is an impermissible collateral attack.

However, even if this were not an impermissible collateral attack, we would hold that defendants' argument fails. Whether ambiguity exists in a court order is a question of law. *Emory v. Pendergraph*, 154 N.C. App. 181, 186, 571 S.E.2d 845, 848 (2002). "[W]here a judicial ruling is susceptible of two

interpretations, the court will adopt the one which makes it harmonize with the law properly applicable to the case." *Kniep v. Templeton*, 185 N.C. App. 622, 631, 649 S.E.2d 425, 431-32 (2007) (citations and quotation marks omitted).

Defendants' contention that the order approving the sale was ambiguous arises from the order's provision that VVGR USA's "contracts" would be sold with its assets but that "[t]he [p]urchased [a]ssets shall be sold free and clear of all liens, interests and encumbrances whatsoever." Defendants argue that because their contract claims against VVGR USA were not "liens, interests or encumbrances," and that VVGR USA's "contracts" were transferred to plaintiff, ambiguity existed as to whether liability on defendants' contract claims were sold to plaintiff and this issue should have been decided by a trier of fact. We disagree.

The receiver's report and motion to sell assets both indicate that the receiver intended to conduct an asset sale exclusive of liabilities. An "Asset Purchase Agreement" form, which the receiver attached to the motion as a template for the sale, specifically excluded transfer of VVGR USA's liabilities to the buyer:

> NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO
> THE CONTRARY, THE PURCHASER SHALL NOT ASSUME

> ANY LIABILITIES OR OBLIGATIONS (FIXED OR
> CONTINGENT, KNOWN OR UNKNOWN, MATURED OR
> UNMATURED), INCLUDING ANY AND ALL
> ENVIRONMENTAL LIABILITIES, OF THE COMPANY OR
> ITS MEMBERS OR SHAREHOLDERS WHETHER OR NOT
> ARISING OUT OF OR RELATING TO THE PURCHASED
> ASSETS OR THE BUSINESS OR ANY OTHER BUSINESS
> OF THE COMPANY OR ITS MEMBERS OR
> SHAREHOLDERS, ALL OF WHICH LIABILITIES AND
> OBLIGATIONS SHALL, AT AND AFTER THE CLOSING,
> REMAIN THE EXCLUSIVE RESPONSIBILITY OF THE
> COMPANY OR ITS MEMBERS OR SHAREHOLDERS (AS
> APPLICABLE).

Furthermore, the bill of sale refers only to the sale of assets and is silent with regard to liabilities. The receiver filed an affidavit in which he stated that the auction sale was for assets only, not liabilities. Finally, the order itself states that "[t]he Purchased Assets shall be sold free and clear of all liens, interests and encumbrances whatsoever." In short, all of the evidence related to the receivership sale clearly indicates that it was a sale of assets, not liabilities. Defendants produced no evidence indicating that the parties, the receiver, or the trial court intended to contravene the long-standing general successor liability rule by selling defendants' unspecified contract claims together with VVGR USA's assets.

Based on these facts, we agree with plaintiff that the order unambiguously transferred VVGR USA's assets and excluded all liabilities, including defendants' contract claims, in the

receivership sale. Therefore, defendants' argument is overruled.

## C. Exceptions to the General Successor Liability Rule

Defendants' final argument is that a genuine issue of material fact existed as to whether any exceptions to the general successor liability rule apply. We disagree.

Defendants rely on the four exceptions enunciated in *Budd Tire* to support their argument. In *Budd Tire*, the Court dealt with a private sale of company assets for inadequate consideration where the purchaser would be protected by the general successor liability rule. *Budd Tire*, 90 N.C. App. at 684, 370 S.E.2d at 267. The Court was forced to carve out exceptions to the general successor liability rule to provide an equitable remedy to a creditor in the face of a fraudulent transaction. *Id.* at 689, 370 S.E.2d at 270. Thus, the Court held that the general successor liability rule does not apply where:

> (1) there is an express or implied agreement by the purchasing corporation to assume the debt or liability; (2) the transfer amounts to a de facto merger of the two corporations; (3) the transfer of assets was done for the purpose of defrauding the corporation's creditors, or; (4) the purchasing corporation is a "mere continuation" of the selling corporation in that the purchasing corporation has some of

> the same shareholders, directors, and
> officers.

*Id.* at 687, 370 S.E.2d at 269.

However, the structured court-ordered sale of assets in the present case is distinguishable from the type of fraudulent private transaction in *Budd Tire* that involved inadequate consideration and shielding the insolvent company from creditors without the creditors having legal remedies prior to the sale. *See id.* Defendants cite to no caselaw, and we find none, supporting the contention that these exceptions are applicable to a court-ordered and supervised public sale. In this context, statutory safeguards are already in place to ensure that the trial court and the receiver conduct dissolution fairly and without fraud. *See* N.C. Gen. Stat. § 1-505 (2013) ("Sales of property [by receivers] shall be upon such terms as appear to be to the best interests of the creditors affected by the receivership."). Furthermore, unlike the private sale in *Budd Tire*, defendants here could have protected their interests by bidding on VVGR USA's assets. The *Budd Tire* exceptions were put in place to prevent fraudulent transfers in private sales. *Id.* at 689, 370 S.E.2d at 270. The need to protect creditors from fraud through application of these exceptions is minimized where, as here, statutory safeguards were already in place to

ensure dissolution without fraud and the creditors could have protected their own interests by participating in the public sale.

For these reasons, we decline to extend the exceptions to the general successor liability rule to the new context of court-ordered and supervised public sales of company assets. Defendants' contention that there existed a genuine issue of material fact as to whether the exceptions apply is overruled.

### III. Conclusion

Because the trial court unambiguously ordered VVGR USA's assets to be sold at the receivership sale free of all liabilities, and the general successor liability rule applies, there is no genuine issue of material fact and defendants' counterclaims against plaintiff based on alleged contracts with VVGR USA are barred as a matter of law. Furthermore, we hold that the *Budd Tire* exceptions to the general successor liability rule put in place to prevent fraudulent transfers in private sales of company assets are inapplicable here. As such, we affirm the trial court's order.

AFFIRMED.

Judges MCGEE and ELMORE concur.