CITY OF THOMASVILLE v. LEASE-AFEX, INC.

No. 107

(Filed 15 July 1980)

**Sales § 22.2— fire suppressant system on bulldozer—alleged negligent design and installation—breach of warranty—summary judgment improper**

In plaintiff's action to recover for damages to its bulldozer allegedly caused by defendant's defective design, construction and installation of a fire suppressant system on the bulldozer, granting summary judgment for defendant on plaintiff's claims for negligence and breach of warranties was improper, since plaintiff offered evidence that the standard of care of a reasonably prudent fire suppression system manufacturer was to manufacture a system which functioned properly, that such standard of care had been breached by the negligent design of the system, and that failure of the system to discharge its total chemical suppressant resulted in substantial fire damage to the bulldozer; whether plaintiff was contributorily negligent as a matter of law because of failure to use defendant's products solely or because of failure to perform proper maintenance was a question of fact to be resolved at trial; and a genuine issue was raised as to whether plaintiff received notice of a limited warranty accompanying each of defendant's products since such notice was included in defendant's service manual which all of plaintiff's employees denied ever having received.

Justice BROCK did not participate in the consideration or decision of this case.

PLAINTIFF appeals from a decision of the Court of Appeals, 44 N.C. App. 506, 261 S.E. 2d 253 (1980), one judge dissenting, affirming summary judgment for defendant entered by *McConnell, J.*, at the 22 January 1979 Session of Superior Court, DAVIDSON County.

Plaintiff owns an Allis Chalmers 12G bulldozer which it uses in its landfill operation. The bulldozer has been twice fitted with a fire suppression system supplied by defendant and has twice suffered subsequent major fire damage.

The first of these fires occurred in the spring of 1974. Plaintiff sued defendant at that time, but lost on defendant's motion for summary judgment. *See City of Thomasville v. Lease-Martin Afex, Inc.*, 38 N.C. App. 737, 248 S.E. 2d 766 (1978).

After the 1974 fire, defendant installed another Afex fire suppression system, model G-700B, in plaintiff's bulldozer. This system is apparently designed to be triggered by heat sensors

mounted in several places throughout the bulldozer. When temperatures rise to 300 degrees Fahrenheit, certain switches close and set off a small $CO_2$ cartridge. This small charge in turn causes a large pressurized cylinder of $CO_2$ to rupture, releasing pressurized $CO_2$. The gas sweeps into a cannister of chemical powder and blows this powder through various nozzles and tubes out over the bulldozer, blanketing any blaze.

On 18 May 1977 the rear portion of plaintiff's bulldozer erupted into flame from an unknown cause. The G-700B Afex fire suppression system did not contain the fire and plaintiff's bulldozer was damaged in the amount of some $14,000.00.

Plaintiff, having suffered a second fire loss on the same piece of equipment, filed complaint on 6 February 1978 against defendant alleging negligence in the design, manufacture and installation of the Afex model G-700B as well as breach of a warranty of merchantability, breach of a warranty of fitness for a particular purpose and breach of an express warranty.

Defendant answered, denying all material allegations and advancing, *inter alia*, the defense of notice of limitation of warranties.

A period of extensive discovery followed. Five of plaintiff's employees were deposed. All denied having received any notice from defendant of the limitation of warranties or of the service requirements of the model G-700B fire suppression system.

Daniel W. Smith, plaintiff's expert witness, also testified by deposition. He stated that he had examined the bulldozer and fire suppression system on 25 May 1977, some seven days after the fire. At that time he found approximately 45 to 47 percent of the chemical powder still within its container and found powder caked in nozzles not near the situs of the fire. In his expert opinion the system had failed to discharge all of its powder because of an inadequate $CO_2$ charge in the large $CO_2$ cylinder. Smith also stated that he had spoken by telephone with defendant's vice-president, William D. Lease, Jr., and had been told that the $CO_2$ cylinder could leak, that defendant knew this and that defendant recommended that the cylinders be weighed every six months or so and replaced if they dropped more than one-half ounce in weight. On examination by defendant's counsel, Smith stated that in his opin-

ion as an engineer, the seal around the large $CO_2$ cylinder was of inadequate design to contain the gas within the cylinder, and stated his opinion that there was another available seal design better suited to the purpose.

Defendant's president and vice-president were also deposed. Each stated they knew of no problem with $CO_2$ leakage from the large cylinder. President William Lease, Sr., further stated, however, that service manuals routinely delivered to owners of the fire suppression systems at the time of those systems' installations recommended that the $CO_2$ cylinder be weighed every six months. This officer stated he did not personally know whether a copy of this manual was ever delivered to plaintiff's employees.

Defendant moved for summary judgment on 17 November 1978. The record is unclear as to what documents it offered as support for the motion. On 26 January 1979, summary judgment was entered for defendant.

Plaintiff appealed to the Court of Appeals. A majority of that court held that the facts surrounding this case were virtually identical with the facts surrounding the 1974 case, *City of Thomasville v. Lease-Martin Afex, Inc., supra.* Just as summary judgment against the plaintiff was proper in that case, the Court of Appeals held, it was proper here. Judge Wells dissented.

Plaintiff appealed to this Court as a matter of right pursuant to G.S. 7A-30(2).

*Richard M. Pearman, Jr., for plaintiff-appellant.*

*Hudson, Petree, Stockton, Stockton & Robinson, by W. Thompson Comerford, Jr., for defendant-appellee.*

CARLTON, Justice.

The sole question on this appeal is whether defendant, in this products liability case, is entitled to summary judgment. The Court of Appeals held that summary judgment was proper. We reverse.

Rule 56(c) of the North Carolina Rules of Civil Procedure provides that summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law."

An issue is genuine if it "may be maintained by substantial evidence." *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E. 2d 897, 901 (1972). *See also Singleton v. Stewart*, 280 N.C. 460, 186 S.E. 2d 400 (1972).

An issue is material if, as alleged, facts "would constitute a legal defense, or would affect the result of the action or if its resolution would prevent the party against whom it is resolved from prevailing in the action." *Koontz v. City of Winston-Salem*, *supra* at 518, 186 S.E. 2d at 901. *See also Singleton v. Stewart*, *supra; Kessing v. National Mortgage Corporation*, 278 N.C. 523, 180 S.E. 2d 823 (1971). More succinctly, a fact is material if it would constitute or would irrevocably establish any material element of a claim or defense. *See* M. Louis, A Survey of Decisions Under the New North Carolina Rules of Civil Procedure, 50 N.C. L. Rev. 729, 736 (1972).

A party moving for summary judgment may prevail if it meets the burden (1) of proving an essential element of the opposing party's claim is nonexistent, or (2) of showing through discovery that the opposing party cannot produce evidence to support an essential element of his or her claim. *Moore v. Fieldcrest Mills, Incorporated*, 296 N.C. 467, 251 S.E. 2d 419 (1979); *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 209 S.E. 2d 795 (1974). Generally this means that on "undisputed aspects of the *opposing* evidential forecasts," where there is no genuine issue of fact, the moving party is entitled to judgment as a matter of law. 2 McIntosh, *North Carolina Practice and Procedure* § 1660.5 at 73 (emphasis added).

If the moving party meets this burden, the nonmoving party must in turn either show that a genuine issue of material fact exists for trial or must provide an excuse for not so doing. *Moore v. Fieldcrest, supra; Zimmerman v. Hogg & Allen, supra*.

If the moving party fails in his showing, summary judgment is not proper regardless of whether the opponent responds. *See generally* McIntosh, *supra*.

The goal of this procedural flux is to allow penetration of an unfounded claim or defense before trial. McIntosh, *supra.* However, it is widely acknowledged that there are certain claims or defenses not well suited to summary judgment. This is because determination of essential elements of these claims or defenses rests within the peculiar expertise of fact finders. Thus if there is any question as to the credibility of affiants in a summary judgment motion or if there is a question which can be resolved only by the weight of the evidence, summary judgment should be denied. *Moore v. Fieldcrest, supra,* citing 3 Barron & Holtzoff, Federal Practice and Procedure § 1234 (Wright ed. 1958). Negligence actions, particularly, are rarely suited for summary disposition because one essential element of the action—the standard of care of a reasonably prudent person—is thought to be a matter within the special competence of the jury. 10 Wright and Miller, Federal Practice and Procedure § 2729 (1973). *See also Moore v. Fieldcrest, supra; Caldwell v. Deese,* 288 N.C. 375, 218 S.E. 2d 379 (1975).

To return to the very first step in the summary judgment process with respect to the negligence claim, defendant as the moving party here must initially (1) prove than an essential element of plaintiff's claim of negligence is nonexistent or (2) show that a forecast of the opposing party's evidence—here the plaintiff's—indicates plaintiff will not be able to prove facts giving rise at trial to all essential elements of the claim of negligence. *Moore v. Fieldcrest, supra.*

Defendant asserts here that, as to the claim of negligence in the manufacture and installation of the system, plaintiff's own expert witness testified by deposition that the system was installed according to the schematics provided by the defendant. Apparently on its face, the inference is that plaintiff's evidence shows no negligence. As to the claim of negligent design, defendant points to that portion of the expert's testimony where he discussed the possibility of using a different seal on the $CO_2$ cylinder. At that time, the witness also stated, "I've made no contention that anyone was negligent because they did not use an o-ring seal." Again the inference is that plaintiff's own evidence shows a lack of negligence. Finally, defendant points to evidence in the depositions that plaintiff itself maintained the equipment and did not seek defendant's help in recharging the $CO_2$ cannisters as show-

ing plaintiff itself was contributorily negligent. In all these arguments, defendant is alleging that a forecast of plaintiff's own evidence shows it cannot prove facts to support essential elements of a claim of negligence.

As in any action for negligence, the essential elements of a suit for products liability sounding in tort must include

(1) evidence of a standard of care owed by the reasonably prudent person in similar circumstances;

(2) breach of that standard of care;

(3) injury caused directly or proximately by the breach, and;

(4) loss because of the injury.

W. Prosser, *Hornbook of the Law of Torts* § 30 (4th ed. 1971).

Viewing, as we must, the documents submitted at the hearing on the motion for summary judgment in a light indulgent to the plaintiff, *Kessing v. National Mortgage Corporation, supra,* we believe that the defendant has failed to meet its burden of showing undisputed aspects of plaintiff's evidentiary forecast, *see* McIntosh, *supra* at § 1660.5 at 73, do not support the essential elements of negligence.

First, as to the standard of care, the manufacturer of a chattel is under a duty to the purchaser to use reasonable care in its manufacture and when reasonable care so requires to give adequate direction for its use. Any injury to persons or property caused by a failure to follow this standard renders the manufacturer liable. *Corprew v. Geigy Chemical Corporation,* 271 N.C. 485, 157 S.E. 2d 98 (1967).

Here, plaintiff's expert witness Smith stated in his deposition that the purpose of having a fire suppression system was to have it function properly. The fair inference for the plaintiff from this evidence is that the standard of care of a reasonably prudent fire suppression system manufacturer is to manufacture a system which functions properly. While this inference may be successfully challenged at trial, at summary judgment stage there is sufficient evidence of the standard to forestall immediate disposition of the case and defendant has presented no other forecast of the evidence to undermine this.

Indeed, if as the Court in *Corprew v. Geigy Chemical Corporation, supra,* suggests, the duty of a manufacturer is to provide adequate direction for a product's use, then the deposition of five of plaintiff's employees that they were never instructed by the defendant to weigh the $CO_2$ cylinder to measure loss of $CO_2$ is more than sufficient to withstand summary judgment. Defendant's allegations to the contrary, we find nothing that suggests that the plaintiff cannot establish a requisite standard of care, or that plaintiff's own evidence shows the requisite standard of care was met.

Secondly, as to the breach of that standard of care, plaintiff's expert witness Smith again testified as to what in his opinion was the negligent design which caused the malfunction. While, as defendant points out, Smith also stated that he was not asserting anyone was negligent, we believe this statement came in the context of defense counsel's examination and may have been the product of leading the witness. At any rate, this was a conclusion of an ultimate fact, better left to a fact finder than an expert witness. The conflict between this conclusion and the inference of Smith's earlier statements that the malfunction of the device was due to faulty design is the sort of inconsistency or credibility assessment which should be tested by a trier of fact. Again, we find no merit to defendant's contention that plaintiff cannot show from its evidence forecast breach of a standard of care.

Thirdly, as to the injury caused by the inference of breach, the inference indulgent to the plaintiff from the fact that the bulldozer caught fire, that the system failed to discharge its total chemical suppressant and that the tractor was badly fire damaged, is that the system's failure to function properly caused at least some of the damage to plaintiff's bulldozer. And finally defendant has presented no forecast of the evidence showing a lack of loss.

Plaintiff's evidence forecasted by depositions supports each of the essential elements of negligence and is clearly adequate to survive summary judgment. The facts here, therefore, are much different from those involved in the earlier fire case between these two litigants, *Thomasville v. Lease-Martin Afex, supra.* There, plaintiff's complaint alleged that the fire suppression system failed to operate. An affidavit of plaintiff's employee

however, stated that the system *had* functioned. Thus the allega-
tion of the breach of the duty of care there — defendant's manufac-
ture and sale of a system that failed to operate — was clearly not a
material fact that plaintiff was going to be able to prove at trial.
Summary judgment was therefore properly granted.

Likewise, the facts here are distinguished from *Moore v.
Fieldcrest, supra,* where this Court allowed summary judgment
for a defendant on a plaintiff's allegation of negligence. There
plaintiff alleged that defendant had breached a duty of care by
loading a trailer load of textiles in such an imprudent manner
that bales of textiles tumbled onto the plaintiff, injuring him.
Plaintiff's own deposition, however, indicated that he had seen
similar loading of textiles in other trucks. The inference was that
custom was to load bales several ways, and a forecast of
plaintiff's own testimony showed that the requisite standard of
care did not involve loading a certain way. (For a view *contra,* see
Justice Copeland's dissent, 296 N.C. at 474, 251 S.E. 2d at 424.)
Defendant was not negligent.

Here, defendant's motion for summary judgment accom-
panied by its forecast of plaintiff's evidence, as that forecast was
presented in depositions of plaintiff's employees and experts,
reveals no such fatal inability of the plaintiff to prove the actual
facts of the elements of negligence. It is for the trier of fact to
evaluate the credibility of plaintiff's witnesses and to listen to
any testimony the defendant may present contesting that
evidence.

Defendant, however, is not content to rest on the argument
that plaintiff's own evidence fails to reveal all the essential
elements of negligence. It argues strenuously that the depositions
of plaintiff's employees show plaintiff's own contributory
negligence, barring recovery here as a matter of law. Just as in
negligence actions, summary judgment for contributory
negligence is rarely granted. Defendant's president stated in his
deposition that he did not personally know whether plaintiff's
employees had received the maintenance manual detailing proper
procedures to follow when checking the G-700B fire suppression
system. Furthermore, depositions of this witness and another of
defendant's officers indicated that defendant had manufactured
its system so that it could use chemical suppressants manufac-

tured by other producers and had in fact used another company's $CO_2$ cannisters in the design and production of its own product. Construing inferences from these facts indulgently for the plaintiff, it seems the defendant contemplated that users of its system would use other compatible equipment. Thus any question of improper maintenance because of a failure to use defendant's products solely or because of a failure to perform proper maintenance checks as a matter of contributory negligence becomes an issue of material fact and should be resolved at trial.

As defendant failed to make a showing that no genuine issue of material fact existed here, summary judgment on the negligence issue was improperly granted.

Plaintiff, of course, sued not only for negligence but also for breach of warranties. Defendant moved for summary judgment on these claims on the basis that the plaintiff had received notice of a limited warranty accompanying each of defendant's products. Exhibits appended to the record, which we presume were tendered at summary judgment, indicate that the notice of a limited warranty was included in the defendant's service manual. As all of plaintiff's employees deny ever having received this manual, a genuine issue of material fact exists as to the matter of warranty. This issue cannot be resolved at summary judgment. In view of this, we do not deem it necessary to consider the plaintiff's argument that, as a matter of law, defendant cannot limit his liability even with adequate notice of limited warranty.

For the foregoing reasons, we hold that granting summary judgment for defendant on negligence and breach of warranties was improper; genuine issues of material fact exist in each of these causes of action. The decision of the Court of Appeals is reversed and this case is remanded to that court to remand to the Superior Court of Davidson County for further proceedings in accordance with this opinion.

Reversed and remanded.

Justice BROCK did not participate in the consideration or decision of this case.