872 F.2d 418
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
R.D. PADGETT, Plaintiff-Appellant,
v.
SYNTHES, LTD., Defendant-Appellee.
 No. 88-3927.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 13, 1989.
Decided March 17, 1989.
 
 Bob Warren (Darrell Thomas Johnson, Jr., on brief) for appellant.
 Elizabeth M. Warren (Isaac N. Northup, Jr., Steven D. Cogburn, Roberts, Stevens & Cogburn, P.A., on brief) for appellee.
 Before SPROUSE, Circuit Judge, BUTZNER, Senior Circuit Judge, and RICHARD B. KELLAM, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 R.D. Padgett appeals from the district court's orders setting aside an entry of default against the defendant, Synthes, Ltd., and granting a directed verdict in favor of Synthes. We affirm.
 
 
 2
 * Padgett suffered a broken leg in an automobile accident. The orthopaedic surgeon who treated him attempted to stabilize the broken bone by implanting a metal compression plate manufactured by Synthes. Some time thereafter, Padgett's ostensibly healing leg collapsed under his weight, and the plate broke. Padgett then filed suit against Synthes in the district court, attempting to invoke the court's diversity jurisdiction under 28 U.S.C. Sec. 1332. Padgett alleged that he was a citizen of North Carolina and Synthes either was a foreign corporation transacting business in North Carolina or an unincorporated association or partnership which transacts business in North Carolina.
 
 
 3
 Synthes did not respond to the complaint within the period required by Federal Rule of Civil Procedure 12(a). On Padgett's motion, the clerk entered a default against Synthes. The district court, however, set the default aside pursuant to Rule 55(c) on the ground that Padgett's complaint did not properly allege any basis for jurisdiction, and the clerk was without power to enter a default. The court then afforded Padgett an opportunity to amend his complaint, and Synthes filed a timely answer.
 
 
 4
 Padgett's allegation of diversity could not satisfy his burden of establishing the district court's jurisdiction. "In a properly pleaded diversity action between corporations the plaintiff will not only allege that there is diversity of citizenship, but will also advert to the factors set out by Sec. 1332(c) that establish corporate citizenship." District of Columbia ex rel. Am. Combustion, Inc. v. Transamerica Ins. Co., 797 F.2d 1041, 1043-44 (D.C.Cir.1986). Relief from default lies within the discretion of the district court. United States v. Moradi, 673 F.2d 725, 727 (4th Cir.1982). Rule 55(c), under which such relief is sought, "must be 'liberally construed in order to provide relief from the onerous consequences of defaults and default judgments.' " Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 954 (4th Cir.1987). The district court did not abuse its discretion in setting aside Synthes' default and granting Padgett leave to amend.
 
 II
 
 5
 Padgett also assigns error to the entry of a directed verdict for Synthes. He alleged that he was injured due to Synthes' negligence in designing and manufacturing the compression plate and by Synthes' failure adequately to warn of possible dangers associated with the plate. Padgett's expert witness, James F. Hills, was a mechanical and metallurgical engineer who had no expertise in biomedical engineering. Hills had never examined a compression plate other than the broken plate taken from Padgett's leg. He knew nothing about the plate's design, failure rate, or function. Hills testified that the compression plate might have been made more durable if it were thicker and wider and made of a stronger metal. But he also stated that he did not know whether the thicker, wider plate he proposed would be medically feasible, and he had not consulted any physician in order to determine medical feasibility. Padgett's treating physician was unable to say whether Padgett's healing process would have been better or worse if the plate had not fractured. He explained that a fracture could "go on to a delayed or nonunion despite the fact that the plate may be fully intact." He was unable to testify whether there was any causal connection between the breaking of the plate and movement of the fracture.
 
 
 6
 Under North Carolina law, Padgett was required to show that the compression plate was negligently designed or manufactured, and that his injury resulted from a defect caused by that negligence. See City of Thomasville v. Lease-Afex, Inc., 300 N.C. 651, 268 S.E.2d 190, 194 (1980). Viewing the evidence in the light most favorable to Padgett, he was unable to show either of those essential elements.
 
 
 7
 Mr. Hills's testimony was largely irrelevant to the question of design or manufacturing defect, and Padgett presented no other evidence concerning the design and construction of the plate. The district court aptly observed that Mr. Hills knew a great deal about the stress of metal in airplane wings, but he knew next to nothing about the subject of this law suit, the design, and use of the plate applied to plaintiff's tibia. Moreover, the absence of any evidence indicating any defect or danger in the plate forecloses Padgett's claim that Synthes negligently failed to warn him of such a defect. Padgett's evidence also failed to show a causal connection between the breaking of the plate and the nonunion of his fracture.
 
 
 8
 In a carefully reasoned opinion, the district court fully reviewed under the proper standard the evidence and the inferences that could reasonably be drawn from the evidence. In agreement with the court, we conclude that Synthes was entitled to a directed verdict.
 
 
 9
 AFFIRMED.