MARCIA L. MORGAN, Ancillary Administrator of the Estate of PHILIP N. TILGHMAN JR., Plaintiff-Appellant v. CAVALIER ACQUISITION CORPORATION, D/B/A CAVALIER CORPORATION, and COCA-COLA BOTTLING COMPANY AFFILIATED, INC., Defendants-Appellees

No. 9228SC577

(Filed 17 August 1993)

1. **Products Liability § 28 (NCI4th) — soft drink vending machine — negligence of manufacturer — summary judgment improper**

   In a products liability case where a soft drink vending machine fell on decedent, the trial court erred in entering summary judgment for the manufacturer where genuine issues of material fact existed as to whether defendant was negligent in the design, servicing, and failure to give notice of the danger of the vending machine, since the alleged defect in the machine, its instability, was latent; evidence indicated that defendant knew of the possible misuse of its machines, knew of the dangers arising from that misuse, and failed to provide warnings to the users of its product; and defendant failed to place safety devices on its machines, though they were available at a relatively small cost.

   **Am Jur 2d, Products Liability §§ 289, 736-760.**

2. **Products Liability § 28 (NCI4th) — soft drink vending machine — negligence of owner in failing to correct defects — summary judgment inappropriate**

   In a products liability case where a soft drink vending machine fell on decedent, the trial court erred in granting summary judgment for defendant bottling company which owned the machine where a genuine issue of material fact existed regarding defendant's negligence in failing to respond to information about defects in the vending machine and failing to take action to bolt the machine to the wall or place warning stickers on the machine after complaints from the business manager of the school where the machine was located.

   **Am Jur 2d, Products Liability §§ 289, 736-760.**

3. **Products Liability § 18 (NCI4th)— soft drink vending machine falling on minor—decedent's contributory negligence—genuine issues of material fact**

In a products liability case where a soft drink vending machine fell on decedent, the trial court erred in granting summary judgment for defendants where there were genuine issues of material fact as to whether decedent placed money in the machine and was attempting to retrieve the canned drink for which he had already paid, or whether he was attempting to tilt the machine to steal a drink, and reasonable people could disagree as to whether decedent exercised prudence in the events immediately prior to his death.

**Am Jur 2d, Products Liability §§ 924-750.**

**Products liability: contributory negligence or assumption of risk as defense in action for strict liability or breach of warranty based on failure to provide safety device for product causing injury. 75 ALR4th 538.**

4. **Products Liability § 28 (NCI4th)— soft drink vending machine falling on decedent—gross negligence of manufacturer—sufficiency of evidence**

In a products liability case where a soft drink vending machine fell on decedent, plaintiff presented evidence sufficient to withstand defendants' motion for summary judgment as to the issue of gross negligence where defendant manufacturer had knowledge of the potentially dangerous situation with the machine, and reasonable minds could differ as to whether defendant must be able to show that a thorough investigation concerning the existence of potential problems with the machine had occurred in order to assert that even slight care was exercised by defendant; reasonable minds could differ as to whether defendant was grossly negligent in its indifference to the safety of consumers in light of the evidence that warning labels were placed on the vending machine for trained technicians who serviced the machines but not for consumers who attempted to purchase a canned drink; inexpensive safety devices which operated to prevent canned drinks from being shaken loose were installed in defendant's new machines but not its old ones, in spite of defendant's knowledge of problems with similar machines; and reasonable minds could differ on the issue of gross negligence as to defendant owner

MORGAN v. CAVALIER ACQUISITION CORP.

[111 N.C. App. 520 (1993)]

of the machine where defendant had knowledge of the safety campaign of another drink vending machine manufacturer and knowledge through its employee that this particular machine was generating complaints of money loss.

**Am Jur 2d, Products Liability §§ 289, 736-760.**

**Liability of manufacturer or seller for injury caused by industrial, business, or farm machinery, tools, equipment, or materials. 78 ALR2d 594.**

5. **Corporations § 208 (NCI4th)— one corporation as successor to another—responsibility for products liability claim—summary judgment improper**

A genuine issue of material fact existed as to whether defendant Cavalier Acquisition Corporation was a successor corporation and therefore responsible for products liability claims against Cavalier Corporation, which manufactured the drink vending machine involved in this products liability case, and the trial court therefore erred in granting summary judgment for defendants on this issue.

**Am Jur 2d, Corporations §§ 2862-2870.**

Appeal by plaintiff from orders signed 29 January 1992 by Robert W. Kirby in Buncombe County Superior Court. Heard in the Court of Appeals 29 April 1993.

This is a products liability action. Defendant Cavalier Acquisition Corporation d/b/a Cavalier Corporation (hereinafter "Acquisition Corporation") is a Tennessee corporation which purchased the assets of Cavalier Corporation (hereinafter "Cavalier") upon Cavalier's bankruptcy in 1987. Defendant Coca-Cola Bottling Company Affiliated, Inc. (hereinafter "Bottling Company") is a Delaware corporation. Plaintiff is a North Carolina resident and the ancillary administrator of the estate of Philip N. Tilghman Jr. (hereinafter "decedent"). At the time of his death, decedent was 17 years old and a student at Christ School. Plaintiff appeals from 29 January 1992 orders granting summary judgment in favor of each defendant.

The pertinent facts are as follows: decedent died on 11 November 1988 shortly after a soft drink vending machine at Christ School fell on him. The vending machine was manufactured by Cavalier in March 1986. In April 1986, Cavalier sold this vending machine

to Bottling Company in Asheville. Bottling Company delivered and placed the vending machine in operation at Christ School shortly thereafter. On the date of decedent's death (11 November 1988), the vending machine was located in an unsupervised room next to the school's activity center, known as the " 'C' Club."

The parties submitted conflicting evidence regarding the events which occurred immediately prior to decedent's death. For example, the affidavit of Christopher Ramm provided:

> On November 11, 1988, I was a sophomore at the Christ School in Arden, North Carolina. That evening Philip Tilghman, Jr. [decedent], Griffin Keel, Jason Austin (from Wilmington) and I were on our way to play four-man volleyball in the school gymnasium. The "C" Club was on our way. We went by the "C" Club so that Phil could get a Coke. As we came into the "C" Club, Phil said that he was going to get some change. I stopped to talk to Dr. Burke, a former teacher, and Phil went elsewhere. After I had talked to Dr. Burke for some time, Jason Gibson joined us. It was very noisy in the "C" Club. We had recently had a pep rally and the biggest football game of the year was the next day. About 5 to 10 minutes after we entered the "C" Club, and while I was still talking to Dr. Burke, I heard a terrible crash, ran into the drink room off to the side of the "C" Club, and observed the Coke machine on top of Phil. Several of us threw the machine off him, and I stayed with him until the paramedics came.

> Jason Gibson and Jay Morgan, who were also students at Christ School, had told me before this incident that they had shaken or tipped the Coke machine that fell on Phil to get a drink out of it. I have never heard of Phil doing this. I myself never did it. It was widely rumored that students would shake or tilt this machine to get it to yield a drink, half dozen or so times a week for about a year before Phil's death. This machine took my money quite a few times without giving me a drink. I believe that I lost at least several dollars to it in this fashion, prior to Phil's death. It was widely known that there was a considerable chance of this machine taking your money without giving you a drink.

The affidavit of Jason Austin, another student, tends to show that decedent deposited coins in the vending machine:

MORGAN v. CAVALIER ACQUISITION CORP.

[111 N.C. App. 520 (1993)]

On November 11, 1988, I was a student at the Christ School. . . . That evening I went to the Christ School "C" Club with Phil Tilghman. As we entered Phil asked me and Chris Ramm and someone else for change for a dollar. None of us had any change. I went over and watched the TV and Phil went and talked to some boys playing pool. A little while later Phil went into the room off to the side of the "C" Club where the drink and snack machines are located. I heard him dropping coins into a machine. They went "clink," "clink." Usually you then hear a slamming noise, as the drink comes out. I did not hear any slamming noise, but I heard Phil getting mad, and could hear him making a sound as if he was pushing down the coin return lever. I then left the "C" Club and returned to my dormitory room.

On the other hand, Jay Morgan, another student, testified that he did not observe decedent put change in the machine. Jay Morgan further testified that decedent said "[h]elp me get a Coke" and testified that he helped decedent "to tilt the Coke machine." Jay Morgan also testified that after they shook the machine, "[t]he Coke fell," decedent said "thanks," and he (Jay Morgan) walked away. Thereafter, the machine fell upon decedent. Jason Gibson, another student, testified that "[h]e [decedent] said, 'Would you all help me tip this machine?' I don't remember him saying anything about he lost money or nothing. He could have, but I just don't remember." Jason Gibson refused to help decedent tip the machine. The affidavit of Peter Conway, the Headmaster of Christ School, provided that upon arrival at the scene that evening "I found Philip Tilghman, Jr. lying on the floor, near death. I remained with him until an ambulance arrived, and rode with him in the ambulance to the hospital. During this ride I noticed that he had a dollar bill clutched in his hand."

On 9 November 1990, plaintiff filed a complaint against defendants seeking recovery based upon negligence, breach of implied warranty, and strict liability. Plaintiff alleges *inter alia* that the vending machine was defective because: 1) it was unstable (having a top-heavy design) and did not have a warning device or label alerting the consumer that the machine would fall over when tilted; 2) it did not have a device to prevent drink cans from falling out when the machine was tilted, and; 3) it did not have brackets to anchor it to the ground or wall or a permanent fixture to prevent tilting. Plaintiff further alleges that because the machine would

**MORGAN v. CAVALIER ACQUISITION CORP.**

[111 N.C. App. 520 (1993)]

dispense canned drinks without payment upon being tilted, the next customer who placed coins in the machine would not receive a canned drink. Plaintiff alleges that defendants negligently and wantonly failed to provide these safety devices, with knowledge that it was possible to steal drinks by tilting the machine and with knowledge that many individuals had been killed or seriously injured by tilting soft drink vending machines.

Cavalier experienced serious financial trouble and was placed into involuntary bankruptcy by its creditors in July 1987, approximately sixteen months before decedent's death. Plaintiff claims that defendant Acquisition Corporation was formed for the sole purpose of acquiring Cavalier and argues that defendant Acquisition Corporation was not even formed until the sale of Cavalier was agreed upon. Norman Sarkisan, currently chief executive officer and chairman of the board of defendant Cavalier Acquisition Corporation d/b/a Cavalier Corporation and the sole stockholder of its parent corporation The Beacon Group, Inc., submitted an affidavit stating that "[o]n August 17, 1987 Cavalier Acquisition Corporation was created as an affiliate of The Beacon Group, Inc., and The Beacon Group assigned its rights to purchase the assets of the Debtor [Cavalier] to Cavalier Acquisition Corporation" and on that same date defendant Acquisition Corporation "executed a Memorandum of Sale with the Debtor evidencing its agreement to purchase the assets of the Debtor." (Following the purchase, Mr. Sarkisan was chief executive officer and president of Acquisition Corporation and Doyle Camp was its chief engineer. Mr. Camp also had served as the chief engineer of Cavalier prior to its bankruptcy. Sometime after 1989, Mr. Camp was promoted to president.) Defendant Acquisition Corporation contends *inter alia* that it has no liability because the vending machine was manufactured and sold prior to its corporate existence. Thomas Kale, a Tennessee attorney, submitted an affidavit which stated that he had represented Cavalier throughout the bankruptcy proceedings and that "[t]o the best of my recollection, at the time it went into bankruptcy Cavalier had a claims made liability insurance policy for product liability claims. The renewal premium on this policy came due within a few months after Cavalier went into bankruptcy and the policy was not renewed." Defendant Bottling Company also denied liability.

On 29 January 1992, the trial court granted summary judgment for defendants. Plaintiff appeals.

**MORGAN v. CAVALIER ACQUISITION CORP.**

[111 N.C. App. 520 (1993)]

*George Daly, P.A., by George Daly, for plaintiff-appellant.*

*Roberts Stevens & Cogburn, P.A., by Frank P. Graham and Vernon S. Pulliam, for defendant-appellee Coca-Cola Bottling Company Affiliated, Inc.*

*Ball Barden Contrivo & Lewis, P.A., by Frank J. Contrivo, for defendant-appellee Cavalier Acquisition Corporation, d/b/a Cavalier Corporation.*

EAGLES, Judge.

Plaintiff brings forward two assignments of error. After a careful examination of the briefs, transcript, and record, we reverse the trial court's entry of summary judgment for defendants and remand for trial.

I.

Regarding G.S. 1A-1, Rule 56, our Supreme Court has stated:

> The party moving for summary judgment must establish the lack of any triable issue by showing that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Caldwell v. Deese*, 288 N.C. 375, 218 S.E.2d 379 (1975); *Koontz v. City of Winston-Salem*, 280 N.C. 513, 186 S.E.2d 897 (1972). As this Court remarked in *Koontz*, "An issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action." *Koontz*, 280 N.C. at 518, 186 S.E.2d at 901. All inferences are to be drawn against the moving party and in favor of the opposing party. *Caldwell v. Deese*, 288 N.C. 375, 218 S.E.2d 379; *Koontz v. City of Winston-Salem*, 280 N.C. 513, 186 S.E.2d 897.

*Branks v. Kern*, 320 N.C. 621, 623-24, 359 S.E.2d 780, 782 (1987). Furthermore, it is well established that

> certain claims or defenses are not well suited to summary judgment. For example, summary judgment is rarely appropriate in a negligence case. *City of Thomasville v. Lease-Afex, Inc.*, 300 N.C. 651, 268 S.E.2d 190 (1980). This is because the determination of essential elements of these claims or defenses to these claims are within the peculiar expertise of the fact finders. *Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 251 S.E.2d 419

**MORGAN v. CAVALIER ACQUISITION CORP.**

[111 N.C. App. 520 (1993)]

(1979); 10A Wright, Miller & Kane, Federal Practice and Procedure § 2729 (2d ed. 1973). Similarly, contributory negligence is a jury question unless the evidence is so clear that no other conclusion is possible. *City of Thomasville*, 300 N.C. at 658, 268 S.E.2d at 195-196; *Cowan v. Laughridge Const. Co.*, 57 N.C. App. 321, 326, 291 S.E.2d 287, 290 (1982). "[P]roximate cause is ordinarily a question of fact for the jury, to be solved by the exercise of good common sense in the consideration of the evidence of each particular case." W. Prosser, Handbook of the Law of Torts § 45, at 290 (4th ed. 1971); *see Williams v. Power & Light Co.*, 296 N.C. 400, 403, 250 S.E.2d 255, 258 (1979).

*Smith v. Selco Products, Inc.*, 96 N.C. App. 151, 155-56, 385 S.E.2d 173, 175 (1989), *disc. rev. denied*, 326 N.C. 598, 393 S.E.2d 883 (1990). Here, reasonable persons could differ as to whether decedent exercised prudence in the events immediately prior to his death. Because the evidence could support a finding that defendants' negligence was the proximate cause of decedent's death, we conclude that the trial court erred in granting summary judgment for defendants.

## II.

Plaintiff argues that "[t]here are genuine issues of material fact, precluding summary judgment, as to: 1) whether defendants were negligent in the design, servicing, and failure to give notice of danger of the vending machine which fell on Phil Tilghman [decedent]; 2) whether he was contributorily negligent; and 3) whether defendants were grossly negligent, thus making irrelevant plaintiff's contributory negligence, if any." We agree and reverse the trial court's entry of summary judgment for defendants.

Plaintiff's action against defendants is a products liability action since it has been "brought for or on account of . . . death . . . [allegedly] caused by or resulting from the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling" of a product, namely, the Cavalier vending machine. G.S. 99B-1(3). Here, plaintiff's products liability claim

is based on two separate theories, negligence and breach of warranties. *See Morrison v. Sears, Roebuck & Co.*, 319 N.C.

298, 303, 354 S.E.2d 495, 498 (1987) (action for breach of implied warranty of merchantability is products liability action where action is for injury to person resulting from sale of product); *Wilson Bros. v. Mobil Oil,* 63 N.C. App. 334, 341, 305 S.E.2d 40, 45, *disc. rev. denied,* 309 N.C. 634, 308 S.E.2d 718 (1983) (products liability actions determined by principles of negligence and breach of warranty); C. Daye & M. Morris, North Carolina Law of Torts §§ 26.10, 26.30 (1991) (because Products Liability Act not source of liability, liability determined by rules of negligence, breach of warranty, or other theory of recovery).

. . . .

As with other negligence actions, the essential elements of a products liability action based upon negligence are (1) duty, (2) breach, (3) causation, and (4) damages. *McCollum v. Grove Mfg. Co.,* 58 N.C. App. 283, 286, 293 S.E.2d 632, 635 (1982), *aff'd per curiam,* 307 N.C. 695, 300 S.E.2d 374 (1983).

*Crews v. W. A. Brown & Son,* 106 N.C. App. 324, 329, 416 S.E.2d 924, 928 (1992). *See Driver v. Burlington Aviation, Inc.,* 110 N.C. App. 519, 527, 430 S.E.2d 476, 482 (1993) ("Chapter 99B does not adopt the doctrine of strict liability, as clearly demonstrated by the language in G.S. 99B-4 which codified the common law defense of contributory negligence in products liability actions"); *Stiles v. Chloride, Inc.,* 668 F.Supp. 505 (W.D.N.C. 1987), *aff'd,* 856 F.2d 187 (4th Cir. 1988). In her assignment of error, plaintiff brings forward only a negligence theory of products liability.

### A. *Defendants' Negligence*

#### 1. *Defendant Acquisition Corporation*

[1] It is well established that "[a] manufacturer must properly inform users of a product's hazards, uses, and misuses or be liable for injuries resulting therefrom under some circumstances." *Smith,* 96 N.C. App. at 156, 385 S.E.2d at 173 (citation omitted). Additionally, a manufacturer must inform itself about what safety designs and methods are available in its industry and is under a duty to make reasonable tests and inspections to discover any latent hazards. *Id.; Cockerham v. Ward and Astrup Co. v. West Co.,* 44 N.C. App. 615, 262 S.E.2d 651, *disc. review denied,* 300 N.C. 195, 269 S.E.2d 622 (1980); *Jenkins v. Helgren,* 26 N.C. App. 653, 217 S.E.2d 201 (1975). Plaintiff presented the testimony of Lindley Manning, a registered professional mechanical engineer and a retired

MORGAN v. CAVALIER ACQUISITION CORP.

[111 N.C. App. 520 (1993)]

associate professor of mechanical engineering, who testified that the vending machine had latent hazards arising from its

> instability—in that it can be pushed over so easily is probably the largest of the defects . . .

> . . . .

> . . . Other defects, of course the vending of a free product and the subsequent ability to buy an empty space are really things that entrap people into the rocking of the machine to achieve their goal and there is this latent defect of instability that surprises them and injures or kills them.

> Q: Let me ask you about that. What is latent about the instability?

> A: It isn't obvious to the layman. The first time I pushed on one of these, I thought there is a problem here. When I was first called about the first case I was in, I was a little skeptical, but I never tried to rock one of these big machines . . .

> Q: You don't deny that grabbing ahold [sic] of the machine and pulling it either anywhere from 800 to 1200 to 1400 pounds—I mean that is a lot of weight, isn't it?

> A: Exactly. It will kill you, and it has in this case and in many others.

> Q: And what's latent about the fact that the machine weighs a lot?

> A: You can't necessarily see it nor do you think it, and of course the size of it, it looks like a big stable thing, and it isn't. When I found how easy it was to rock them by pushing on it, I was surprised because I hadn't realized the internal configuration and the weight distribution, but even looking at it is not enough to tell.

Because the alleged defect in the vending machine "is hidden and not apparent, the alleged defect is properly classified as a latent one." *Crews v. W.A. Brown & Son, Inc.*, 106 N.C. App. 324, 329, 416 S.E.2d 924, 928 (1992) (*citing Sutton v. Major Prods. Co.*, 91 N.C. App. 610, 614, 372 S.E.2d 897, 899 (1988) ).

Furthermore, evidence in the record indicates that defendants knew of the possible misuse of the machines, knew of the dangers

arising from that misuse, and failed to provide warnings to the users of its product. The existence of several genuine issues of material fact precludes summary judgment. For example, in 1987 Mr. Sarkisan received a letter dated 1 September 1987 from the chief executive officer of The Vendo Company (hereinafter "Vendo"), a competitor in the industry, describing problems with its (Vendo's) vending machines. The Vendo letter stated that "[r]ecently, there have been several accidents where venders have been tipped over, causing serious personal injury or even death." Vendo's machines were the subject of an ongoing investigation by the United States Consumer Product Safety Commission. The record contains evidence that the Cavalier machine which fell upon decedent had the same generic mechanism as the Vendo machine, which, as described in the letter, dispensed a drink when tilted.

Enclosed with the Vendo letter was a sample "warning label decal" which warned consumers of the problem. Regarding Vendo's safety efforts, the letter stated that "we will promptly send you as many warning label decals as you need. We are also offering at our cost, safety kits to secure the vender . . . . In addition, starting in September The Vendo Company will be enclosing in every vender's flavor label package the warning label decal and safety bulletin." In *Fowler v. General Electric Co.*, 40 N.C. App. 301, 307, 252 S.E.2d 862, 866 (1979), this Court stated that "[t]he general function of warnings and instructions on use of the product is to supply information to individual consumers that is better provided by the manufacturer than obtained by independent sources. A warning is needed when consumers can take steps on their own behalf when they have notice that possible perils are associated with product use. The duty to warn applies to . . . latent dangers . . . ." (citation omitted). Regarding these actions by Vendo, Mr. Sarkisan testified as follows:

A: I knew that a major manufacturer of vending machines called Vendo, which is located in California, was having a substantial problem with their machine.

Q: Tell me what else you knew about that whole matter.

A: We were of the judgment that they, Vendo was manufacturing a defective machine, and that the people found out about it and realized that they might, if they shook the thing hard enough, it would give free product out of it. Essentially that's what I knew about it.

> I also knew that Vendo was attempting to bring all of the other manufacturers into the process by claiming that all vending machines potentially are dangerous. We took a contrary position, and that's about it.

Furthermore, Mr. Sarkisan testified that "we did have a discussion about warning labels, and we were of the opinion that our machines were manufactured safe and did not require warning labels." Evidence in the record also reflects that Acquisition Corporation had warning labels on the Cavalier vending machines "in regard to electrical shock hazards and leveling machines, how you set it up and the do's the don'ts of setting the machine up" (quoting Mr. Camp) for technical personnel who installed the machines. However, the machines displayed no warning labels for consumers who, having inserted money in the machine in anticipation of receiving a canned drink in return, might choose to rock or tilt the machine to cause it to yield the desired canned drink for which payment had been properly made.

Additionally, plaintiff presented evidence regarding the existence of safety devices which were not placed on the Cavalier machine at issue. Mr. Camp conceded that "one of the things you look for in designing a soft drink vending machine [is] the propensity of children to want to get products out of it without putting the coins in." He further testified that "[w]e have made some kits through the years that bolts [sic] machines to the floor, bolts [sic] machines to the wall." Mr. Sarkisan also testified that "we had a device in new Cavalier's equipment that caused the machine to be fail-safe, you could not shake a product and cannot shake a product loose." In response to plaintiff's requests for admissions, defendant Acquisition Corporation admitted that "Cavalier Acquisition Corporation never incorporated into any soft drink vending machine any device to prevent tipping prior to August 1990." Additionally, there was evidence in the record that even before decedent's death in November 1988 Cavalier had developed a device, known as a "product retainer" or an "anti-rob" mechanism, designed to prevent the dispensing of a product upon the tipping of the machine. The devices cost 15 to 20 cents each. These devices were not placed in the Cavalier machine at issue. Viewed in the light most favorable to plaintiff as non-movant, reasonable minds could differ as to the adequacy of defendant Acquisition Corporation's actions in evaluating the need for the use of these safety devices or for the implementation of safety measures similar to those of

Vendo, the manufacturer of a similar product, the problems of which defendant Acquisition Corporation had knowledge.

### 2. *Defendant Bottling Company*

[2]   Plaintiff also presented evidence of defendant Bottling Company's negligence. Vendo's 1 September 1987 letter was sent to each of Vendo's customers, and defendant Bottling Company was a Vendo customer which had purchased several hundred vending machines from Vendo. Defendant Bottling Company concedes that at least four or five of these machines were "triple-depth" models similar to the Cavalier model at issue here. Ron Fisher, defendant Bottling Company's operations manager and formerly its service department manager, stated that the Cavalier machine had the "same generic mechanism" as the Vendo machine which dispensed a drink when tilted. Defendant Bottling Company presented the testimony of several officers and employees who denied knowledge of the Vendo letter and safety campaign. This conflict in the evidence presents a genuine issue of material fact.

Further, Garrett Barnwell, defendant Bottling Company's service technician for the Cavalier machine at issue testified that he had received complaints from the school's business manager about student complaints regarding the machine's taking money without dispensing drinks. He testified that upon his investigation he discovered that the machine was working well mechanically. He stated that he told the business manager that given that the machine was working well mechanically, the problem was that people "were tilting the machine and getting free drinks" and suggested that the solution was "to either bolt the machine to the wall or put stickers on it, but I didn't have any stickers at the time." However, he testified that he did not report these conclusions or the problem to anyone at defendant Bottling Company.

Given all of this evidence, we conclude that a genuine issue of material fact exists regarding the issue of defendant Bottling Company's negligence.

### B. *Decedent's Contributory Negligence*

[3]   Defendants argue that G.S. 99B-4(3) supports the trial court's entry of summary judgment because "plaintiff's own expert testified that the specific vending machine at issue in this case was working properly, that it had been set up properly by the defendants without alteration in any way, and that it was close to inconceivable that

**MORGAN v. CAVALIER ACQUISITION CORP.**

[111 N.C. App. 520 (1993)]

the machine could have fallen without some deliberate voluntary act to tip the machine." G.S. 99B-4 provides:

> No manufacturer or seller shall be held liable in any product liability action if:
>
> . . . .
>
> (3) The claimant failed to exercise reasonable care under the circumstances in his use of the product, and such failure was a proximate cause of the occurrence that caused injury or damage to the claimant.

On this record, we cannot conclude as a matter of law that decedent failed to exercise reasonable care under the circumstances. Several students, contemporaries of decedent, testified that it was well known that if the Cavalier machine at issue was tilted, a canned drink would be dispensed. *See Taylor v. Walker*, 320 N.C. 729, 734, 360 S.E.2d 796, 800 (1987) (stating that evidence need only show that plaintiff acted reasonably under the circumstances, not that he "chose the best or wisest alternative"). Plaintiff presented evidence that decedent was attempting to retrieve the canned drink for which he had already paid. Jason Austin, a student who was present at the activity center, stated that he heard decedent's coins drop into the vending machine. Additionally, plaintiff presented an affidavit from another student detailing the decedent's honesty, which, when viewed in the light most favorable to plaintiff, is indicative of the likelihood that the decedent actually put money in the vending machine to pay for the canned drink and is supportive of Jason Austin's statement.

There was contradictory evidence as to whether decedent placed money in the machine. Defendants presented the testimony of another student who stated that the decedent did not put money in the vending machine and that the decedent asked for help in tipping the vending machine: the statements of two other students tend to corroborate this testimony. However, when viewed in the light most favorable to plaintiff as non-movant (as is required in ruling on a motion for summary judgment), the testimony of at least one, if not all, of these students could be subject to impeachment at trial. For example, in his deposition Jason Gibson was asked to comment on his previous statement given in the days following the accident and testified as follows:

**MORGAN v. CAVALIER ACQUISITION CORP.**

[111 N.C. App. 520 (1993)]

Q: Is that [Jason Gibson's prior statement] accurate?

A [Jason Gibson]: No.

Q: What's inaccurate about that?

A: The part leading up to it: "I was watching T.V." That was accurate, and when Dr. Burke went and called me out.

Q: Everything else is inaccurate?

A: See, I told you, for a long time, I tried to figure out what really happened. *And I was thinking that I was going to get charged for manslaughter.* My mind was so messed up when I wrote these things.

Q: So, if Mr. Peake was—testified, that this is what you said, would that be correct, or incorrect?

    MR. FERGUSON: Objection

A: If he testified—if he testified that I—that I said that, sure. I don't remember him coming, but he probably did. But my memory's bad. But if he said that was an accurate description of what happened, no. It's not.

Q: But if he was to say that's what you said—

A: Yeah.

Q: —that would be correct?

A: Yes, sir.

(Emphasis added.) Additionally, Jay Morgan testified that "There was [sic] three of us, me, Jason [Gibson], and [Roscoe] Keel. You know, we talked before that happened, and we hadn't signed that or anything, so it was like a collaboration before I talked to the police officer, so it was like a collaboration of what all three of us saw and heard." Viewed in the light most favorable to plaintiff as non-movant, Jason Gibson's admitted fear of a manslaughter charge, as well as his faded recollection, subjects his testimony to possible impeachment. Similarly, the pre-interview collaboration described by Jay Morgan also subjects the testimony of Jay Morgan, Jason Gibson, and Roscoe Keel to possible impeachment. Even assuming *arguendo* that these statements were not subject to impeachment, the conflicts in the evidence regarding the events

MORGAN v. CAVALIER ACQUISITION CORP.

[111 N.C. App. 520 (1993)]

just prior to the decedent's death present genuine issues of material fact which must be resolved by a jury.

Here, when the evidence tending to show that decedent placed coins in the machine is viewed in the light most favorable to plaintiff, we conclude that reasonable people could disagree as to whether decedent exercised prudence in the events immediately thereafter. *See Branks v. Kern*, 83 N.C. App. 32, 36, 348 S.E.2d 815, 818 (1986), *rev'd on other grounds*, 320 N.C. 621, 359 S.E.2d 780 (1987) ("Issues of contributory negligence, like those of ordinary negligence, are rarely appropriate for summary judgment. Only where plaintiff's own evidence discloses contributory negligence so clearly that no other reasonable conclusion may be reached is summary judgment to be granted"); *Taylor*, 320 N.C. at 734, 360 S.E.2d at 800 (evidence need only show that plaintiff acted reasonably under the circumstances, not that plaintiff "chose the best or wisest alternative"). *Compare Oden v. Pepsi Cola Bottling Company of Decatur, Inc. & The Vendo Company*, --- Ala. ---, 1993 W.L. 179428 (No. 1910502, No. 1910503, May 28, 1993) (affirming entry of summary judgment against plaintiff-administrator where it was *undisputed* that decedent was attempting to *steal* a soft drink from the vending machine; interpreting Alabama case law as barring "any action seeking damages based on injuries that were a direct result of the injured party's knowing and intentional participation in a crime involving moral turpitude" and noting public policy grounds in support thereof). Because the evidence here can support a finding that defendants' negligence was the proximate cause of decedent's death, we conclude that the trial court erred in granting summary judgment in defendants' favor.

## C. *Defendants' Gross Negligence*

[4] Plaintiff argues that *assuming arguendo* decedent was "contributorily negligent as a matter of law, summary judgment is still not appropriate, because there is an issue of fact as to whether defendants were grossly negligent." As noted *supra*, on this record we cannot conclude as a matter of law that decedent was contributorily negligent. Additionally, we conclude that there is a genuine issue of material fact as to whether defendants' conduct was grossly negligent.

Recently, in *Cowan v. Brian Center Management Corp.*, 109 N.C. App. 443, 448-49, 428 S.E.2d 263, 266 (1993), this Court defined gross negligence as follows:

MORGAN v. CAVALIER ACQUISITION CORP.

[111 N.C. App. 520 (1993)]

[G]ross negligence is "something less than willful and wanton conduct," *Cole* [*v. Duke Power Co.*], 81 N.C. App. [213] at 218, 344 S.E.2d [130] at 133 [*disc. rev. denied*, 318 N.C. 281, 347 S.E.2d 462 (1986)], and includes "the absence of even slight care," *Beck* [*v. Carolina Power & Light Co.*], 57 N.C. App. [373] at 384, 291 S.E.2d [897] at 904 [*aff'd per curiam*, 307 N.C. 267, 297 S.E.2d 397 (1982)], "indifference to the rights and welfare of others," *id.*, and "negligence of an aggravated character." *Cole*, 81 N.C. App. at 219, 344 S.E.2d at 133; *Henderson* [*v. LeBauer*], 101 N.C. App. [255] at 262, 399 S.E.2d [142] at 146 [*disc. review denied*, 328 N.C. 731, 404 S.E.2d 868 (1991)].

In her brief, plaintiff argues that a jury could find defendants grossly negligent through their "wanton indifference to a known product defect" in that

[i]t is reasonable for a jury to find that defendants' failure to correct or issue any warning about the deceptively dangerous drink machines exhibited reckless and wanton indifference to Phil Tilghman [decedent]. This is especially true in view of the defendants' knowledge that shaking and tilting of the machine was commonplace in general and at Christ School in particular, and that such shaking and tilting could result in injury unless precautions were taken. This problem was well known in the industry. Cavalier had designed a safety device to remedy the problem, but then failed to fit or retrofit the machine involved here. Coke had knowledge of the problem in general and knowledge in particular through Garrett Barnwell.

Viewed in the light most favorable to plaintiff as non-movant, plaintiff has presented evidence sufficient to withstand defendants' motion for summary judgment as to the issue of gross negligence. For example, when asked about Acquisition Corporation's response to Vendo's safety campaign (which occurred well before decedent's death) for machines that were substantially similar to its (Acquisition Corporation's) own, Mr. Sarkisan merely stated that "We took a contrary position, and that's about it." Merely taking a "contrary position" in no way demonstrates that Acquisition Corporation exhibited reasonable care in light of the alleged potentially dangerous condition of which Acquisition Corporation had knowledge. (In addition to the documents regarding the Vendo safety campaign, plaintiff presented numerous articles in industry trade journals and print media describing various accidents involving falling vending

machines). Mr. Sarkisan and Mr. Camp both admitted that they had knowledge of incidents in which persons were injured by falling soft drink machines. There is no indication of any research, investigations, reports, or any other type of documented studies showing that Acquisition Corporation at least investigated the potential existence of problems with its own machines at that time. In view of evidence that Cavalier's machines were substantially similar to those of Vendo, which prior to decedent's death was under investigation by the Consumer Product Safety Commission for problems involving the stability of its machines, we conclude that reasonable minds could differ as to whether Acquisition Corporation must be able to show that a thorough investigation had occurred in order to assert that "even slight care," *Beck*, 57 N.C. App. at 384, 291 S.E.2d at 904, was exercised by Acquisition Corporation.

Additionally, labels warning of electrical hazards were placed on the machine for *trained technicians* who serviced these machines, yet no labels existed for consumers to warn of arguably more hidden and deceptive hazards, the machine's top-heavy design and weight. We conclude that reasonable minds could differ as to whether Acquisition Corporation was grossly negligent in its indifference to the safety of consumers in light of the evidence that warning labels were placed on the machine for trained technicians who serviced the machines but not for consumers who attempted to purchase a canned drink. Further, plaintiff presented evidence that inexpensive safety devices which operated to prevent canned drinks from being shaken loose were installed in Acquisition Corporation's *new* machines, but were not installed in the old machines like the one at issue here, despite Acquisition Corporation's knowledge of the problems with Vendo's machines. Acquisition Corporation's chief engineer, Mr. Camp, even conceded that "one of the things you look for in designing a soft drink vending machine [is] the propensity of children to want to get products out of it without putting the coins in."

Similarly, we conclude that reasonable minds could differ on the issue of gross negligence as to defendant Bottling Company. As a customer of Vendo, Bottling Company also had knowledge of the Vendo safety campaign. Bottling Company concedes that at Christ School there were "complaints of money loss," which tends to show that the machine was dispensing free canned drinks, depriving a subsequent purchaser of a canned drink. As noted

*supra*, Mr. Barnwell suspected, based upon his inspections of the machine which killed decedent, that the machine was dispensing canned drinks when tilted by the students at Christ School. Mr. Barnwell testified that during the weeks prior to decedent's death, he (Mr. Barnwell) was out of warning labels and that it was his impression that Christ School was going to take care of the problem by creating its own labels or bolting the machine to the wall. Defendant Bottling Company owned the machine and its lease agreement with Christ School provided that Bottling Company "shall have the right at all times during business hours to enter dealer's premises for the purpose of . . . maintaining, repairing or removing any beverage equipment owned by [defendant]." Mr. Barnwell did not report his suspicions (regarding the tilting of the machine or the reasons for the money loss) to his superiors. The record is devoid of any evidence indicating that Mr. Barnwell violated company procedure by keeping this information to himself. Additionally, Bottling Company conceded that it had no "safety or loss prevention officer or department" prior to decedent's death. When all of this evidence is viewed in the light most favorable to plaintiff as non-movant, we conclude that a genuine issue of material fact exists as to the issue of defendant Bottling Company's gross negligence.

Given the evidence presented in this record, we conclude that defendants have failed to meet their burden of showing that no genuine issue of material fact exists as to the issue of gross negligence. *Cf. Akzona, Inc. v. Southern Railway Co.*, 314 N.C. 488, 334 S.E.2d 759 (1985) (reversing directed verdict for defendants on gross negligence issue). Accordingly, we remand for trial. *See Cowan v. Brian Center Management Corp.*, 109 N.C. App. at 449-51, 428 S.E.2d at 266-67; *Berrier v. Thrift*, 107 N.C. App. 356, 360, 420 S.E.2d 206, 208 (1992), *disc. rev. denied,* 333 N.C. 254, 424 S.E.2d 918 (1993).

III.

[5] Plaintiff contends that "[t]here are genuine issues of material fact, precluding summary judgment, as to whether Cavalier Acquisition is responsible for the products liability claims of Cavalier." We agree and remand for trial on this issue.

In *Budd Tire Corp. v. Pierce Tire Co.*, 90 N.C. App. 684, 687, 370 S.E.2d 267, 269 (1988), this Court stated:

MORGAN v. CAVALIER ACQUISITION CORP.

[111 N.C. App. 520 (1993)]

A corporation which purchases all, or substantially all, of the assets of another corporation is generally not liable for the old corporation's debts or liabilities. See *McAlister v. Express Co.*, 179 N.C. 556, 103 S.E. 129 (1920); Robinson, North Carolina Corporation Law and Practice, section 25-6 (1983); 15 Fletcher Cyc Corp, section 7122 (perm. ed. 1983). Exceptions exist where: (1) there is an express or implied agreement by the purchasing corporation to assume the debt or liability; (2) the transfer amounts to a de facto merger of the two corporations; (3) the transfer of assets was done for the purpose of defrauding the corporation's creditors; or (4) the purchasing corporation is a "mere continuation" of the selling corporation in that the purchasing corporation has some of the same shareholders, directors, and officers. *Bud Antle, Inc. v. Eastern Foods, Inc.*, 758 F.2d 1451 (11th Cir. 1985); *Robinson, supra*; 15 *Fletcher Cyc Corp, supra*. Some cases cite inadequate consideration for the purchase, or a lack of some of the elements of a good faith purchaser for value, as a separate exception, *see Kemos, Inc. v. Bader*, 545 F.2d 913 (5th Cir. 1977); *Cyr v. B. Offen & Co. Inc.*, 501 F.2d 1145 (1st Cir. 1974), although those are generally considered only as additional factors in determining whether the transaction was for the purpose of avoiding creditors' claims, *Bud Antle, Inc., supra*, or whether the new corporation is a mere continuation of the old one. *Robinson, supra*. Our case law is less recent but has adopted essentially the same exceptions. See *McAlister v. Express Co., supra* at 560, 561, 565, 103 S.E. at 130-131, 133.

One of the *Budd Tire* exceptions exists where it is shown that "the transfer of assets was done for the purpose of defrauding the corporation's creditors." *Budd Tire*, 90 N.C. App. at 687, 370 S.E.2d at 269. "In order to become liable as a successor corporation for the debts of another corporation, there must *at a minimum* be a transfer of assets from the old corporation to the transferee corporation." *Statesville Stained Glass v. T.E. Lane Construction & Supply*, 110 N.C. App. 592, 430 S.E.2d 437, 441 (1993) (*citing Budd Tire*, 90 N.C. App. at 687, 370 S.E.2d at 269) (emphasis in original). Here, plaintiff has made this minimum showing. In its attempt to establish that defendant Acquisition Corporation is not a successor corporation to the dissolved corporation (Cavalier), defendant Acquisition Corporation relied on the affidavits of Mr.

MORGAN v. CAVALIER ACQUISITION CORP.

[111 N.C. App. 520 (1993)]

Sarkisan and Mr. Kale *inter alia*. We conclude that these affidavits are insufficient to establish that Acquisition Corporation is not a successor corporation of Cavalier for summary judgment purposes. *See Heather Hills Home Owners v. Carolina Cust. Dev.*, 100 N.C. App. 263, 266, 395 S.E.2d 154, 155, *disc. rev. denied*, 327 N.C. 634, 399 S.E.2d 327 (1990). Drawing all inferences against defendant Acquisition Corporation as movant and in favor of plaintiff as non-movant, we conclude that defendant Acquisition Corporation has failed to show that no genuine issue of material fact exists. Accordingly, we remand for trial as to this issue. Although we rest our decision here on plaintiff's forecast of evidence regarding one of the *Budd Tire* exceptions, we do not intend to foreclose plaintiff's right upon retrial to try to prove defendant Acquisition Corporation's liability by the other *Budd Tire* exceptions or by any other theory at trial. *See Budd Tire*, 90 N.C. App. at 687, 370 S.E.2d at 269.

## IV.

In sum, we conclude that plaintiff's evidence raises genuine issues of material fact which a jury must determine. Since genuine issues of material fact exist regarding plaintiff's claims, we conclude that the trial court erred by granting summary judgment for defendants. For the reasons stated, we reverse the entry of summary judgment for defendants and remand the cause for trial as to all issues.

Reversed and remanded.

Judges MARTIN and JOHN concur.